754 P.2d 845

**Frank PADILLA, Plaintiff–Appellant,**

v.

**PUEBLO OF ACOMA, d/b/a Sky City Contractors, Defendant–Appellee.**

**No. 16835.**

Supreme Court of New Mexico.

May 9, 1988.

Rehearing Denied June 3, 1988.

Grisham, Lawless & Earl, Richard V. Earl, Albuquerque, for plaintiff-appellant.

Ortega & Snead, P.A., Michael D. Bustamante, Albuquerque, for defendant-appellee.

## OPINION

RANSOM, Justice.

Frank Padilla, a roofing consultant, sued the Pueblo of Acoma d/b/a Sky City Contractors for breach of contracts under which Padilla supervised Sky City's installation of roofs on two building projects located off the Acoma reservation. The Pueblo moved to dismiss the suit for lack of subject matter jurisdiction on the grounds of sovereign immunity. Following a hearing, the district court granted the Pueblo's motion and dismissed the complaint. Padilla appeals. We reverse.

We initially address whether the Pueblo adequately raised lack of subject matter jurisdiction in its motion to dismiss under SCRA 1986, 1–012(B)(1). Padilla submits that, under *Aetna Casualty & Surety Co. v. Bendix Control Division*, 101 N.M. 235,

680 P.2d 616 (Ct.App.1984), a proper challenge of jurisdiction must contain something more than the bare allegations within the motion. *Id.* at 240, 680 P.2d at 621. Padilla argues that the Pueblo's failure either to verify or to accompany its motion with an affidavit or other sworn testimony requires this Court to accept as true Padilla's allegation that Sky City is an unincorporated association registered and authorized to do business in New Mexico and, by implication, not protected under the Pueblo's tribal immunity.

The focus in *Aetna* was limited, however, to factual allegations that would satisfy the "minimum contacts" due process requirements for personal jurisdiction over a nonresident defendant. There, the complaint alleged sufficient facts concerning the commission of a tortious act within the state. The allegations in the complaint had to be taken as true in the absence of affidavits or other testimony under oath supporting a motion asserting lack of personal jurisdiction. In this case, the jurisdictional attack is on the power and authority of the court to act when an Indian tribe asserts its sovereign immunity. The plaintiff's naming of the Pueblo of Acoma as the defendant, together with the long recognized policy of judicial notice of Pueblo Indian tribes, *United States v. Lucero*, 1 N.M. 422 (1869), established the factual basis for the Pueblo's motion to dismiss on the grounds of sovereign immunity. No sworn testimony was necessary to establish that the defendant was indeed a Pueblo Indian tribe. We accept as true, and discuss later in this opinion, the allegation that the defendant Pueblo was doing business as an unincorporated association registered and authorized to do business in the state.

The issue before us is whether the state courts have the power and authority to exercise jurisdiction over an Indian tribe that has not waived sovereign immunity for liability claimed to arise out of the

tribe's off-reservation conduct. *See State v. Patten*, 41 N.M. 395, 69 P.2d 931 (1937) (three jurisdictional essentials are jurisdiction over parties, jurisdiction of subject matter, and power or authority to decide particular matters presented).[1]

The laws of the United States are the supreme law of the land, and judges in every state are bound thereby. U.S. Const. art. VI. We feel constrained, therefore, to answer the jurisdictional question in terms of whether the supreme law of the land has divested the courts of the State of New Mexico of the power and authority over an Indian tribe that has not waived sovereign immunity for off-reservation business conduct. Or, to put it in other words, has the supreme law of the land divested state courts of subject matter jurisdiction over a private claim against an Indian tribe that asserts sovereign immunity for its off-reservation business conduct?

■ Where a tribe's sovereign immunity obtains, it is well settled and binding upon this Court that only under congressional consent or an effective waiver may a state court exercise jurisdiction over a recognized Indian tribe. *Puyallup Tribe, Inc. v. Department of Game of Wash.*, 433 U.S. 165, 97 S.Ct. 2616, 53 L.Ed.2d 667 (1977). Furthermore, any waiver of tribal immunity from suit " 'cannot be implied but must be unequivocally expressed.' " *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978) (quoting *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114 (1976)). Tribal sovereignty is subject to plenary federal control and definition. Absent federal authorization, tribal immunity is privileged from diminution by the states. *Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Eng'g*, 476 U.S. 877, 106 S.Ct. 2305, 2313, 90 L.Ed.2d 881 (1986).

Crucial to the concluding decisional portion of this opinion is the absence of any

---

1. Padilla contends as well that by doing business in the state Pueblo of Acoma d/b/a Sky City is susceptible to state court jurisdiction under the New Mexico "long arm" statute, NMSA 1978, Section 38–1–16 (Repl.Pamp.1987).

Reliance on this statute to confer jurisdiction is misplaced. Section 38–1–16 allows the courts of this state to assert in personam jurisdiction over nonresident defendants. *Moore v. Graves*, 99 N.M. 129, 654 P.2d 582 (Ct.App.1982).

controlling case law specifically divesting state courts of jurisdiction over Indian tribes doing business outside of reservation boundaries as an unincorporated association registered and authorized to do business in the state. Before reaching the determinative issue in this case, however, we will consider other significant points raised and argued by the parties.

Padilla points to no federal legislation which would constitute congressional consent to sue the Pueblo of Acoma d/b/a Sky City Contractors for breach of contract. He does claim that NMSA 1978, Section 53–9–1 (Repl.Pamp.1983), establishes that the Pueblo Indians may be sued as a corporation and be required to defend such suit in any court of law or equity. Padilla relies on the following statutory language:

> The inhabitants within the state of New Mexico, known by the name of the Pueblo Indians, and living in towns or villages built on lands granted to such Indians by the laws of Spain and Mexico * * * shall be known in the law by the name of the Pueblo de * * *, (naming it), and by that name they and their successors shall have perpetual succession, sue and be sued, plead and be impleaded, bring and defend in any court of law or equity, all such actions, pleas and matters whatsoever, proper to recover, protect, reclaim, demand or assert the right of such inhabitants, or any individual thereof, to any lands, tenements or hereditaments, possessed, occupied or claimed contrary to law, by any person whatsoever, and to bring and defend all such actions, and to resist any encroachment, claim or trespass made upon such lands, tenements or hereditaments, belonging to said inhabitants, or to any individual.

■ The clause "sue and be sued" must be evaluated within the context of the statute and its history. The original enactment of Section 53–9–1 predates the 1848 treaty of Guadalupe Hildago which similarly protected title to Pueblo Indian lands. *See Treaty of Peace Between the United States and Mexico*, NMSA 1978 (Vol.1 Pamp.3); *United States v. Joseph*, 94 U.S. (4 Otto) 614, 24 L.Ed. 295 (1876), *aff'g* 1 N.M. 593 (1874). The territorial statute was passed to define the status of Pueblo Indian tribes under United States jurisdiction and to establish their right to protect their lands from encroachment. *See Garcia v. United States*, 43 F.2d 873 (10th Cir.1930). Further, in *Your Food Stores, Inc. v. Village of Espanola*, 68 N.M. 327, 361 P.2d 950, *cert. denied*, 368 U.S. 915, 82 S.Ct. 194, 7 L.Ed.2d 131 (1961), this Court, in examining whether a political subdivision of the state could extend its corporate limits to include lands of an Indian tribe, found that the terms upon which New Mexico was admitted to the United States left no room for a claim by the state to governmental power over the Indian tribes and Indian lands, unless Congress specifically granted jurisdiction or unless the decisions of the United States Supreme Court sanctioned the exercise of jurisdiction. *Id.* at 330, 361 P.2d at 952. The territorial statute, which clearly was enacted to protect the right of Indians to aboriginal lands, cannot be extended to constitute a federal grant of general jurisdiction over Indian tribes to the State.

■ Tribal immunity cases generally center upon the Indian Reorganization Act of 1934, codified at 25 U.S.C. Sections 461–479 (1976). *See Felix S. Cohen's Handbook of Federal Indian Law* Ch. 6, § A4c (R. Strickland ed. 1982). Under Section 16 of the Act, Indian tribes have been found to have waived immunity by virtue of legislative ordinances enacted under a tribal constitution. *See Merrion v. Jicarilla Apache Tribe*, 617 F.2d 537 (10th Cir.1980), *aff'd*, 455 U.S. 130, 102 S.Ct. 894, 71 L.Ed. 2d 21 (1982). Further, federal courts generally have held that the "sue and be sued" proviso of a tribal corporate charter under Section 17 of the Act constitutes a waiver of immunity for the tribe as a corporate entity, although it does not waive the sovereign immunity of the tribe as a political entity. *Boe v. Fort Belknap Indian Community*, 455 F.Supp. 462 (D.Mont.1978), *aff'd*, 642 F.2d 276 (9th Cir.1981). However, the Pueblo of Acoma never has availed itself of the opportunity to adopt a constitution and incorporate under the Act.

*See* An Ordinance Prescribing a Code of Law and Order for the Pueblo de Acoma Indian Reservation (1971). Consequently, the Pueblo has no legislative ordinance enacted under a tribal constitution or a corporate charter that arguably could provide the basis for an express waiver of sovereign immunity. *See Merrion v. Jicarilla Apache Tribe,* 617 F.2d 537 (10th Cir.1980) *aff'd,* 455 U.S. 130, 102 S.Ct. 894, 71 L.Ed. 2d 21 (1982); *Ramey Constr. Co. v. Apache Tribe of Mescalero Reservation,* 673 F.2d 315 (10th Cir.1982).

■ It is further urged that the State's exercise of jurisdiction over Sky City should be evaluated under the infringement test formulated in *Williams v. Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), and applied in *Chino v. Chino,* 90 N.M. 203, 561 P.2d 476 (1977). *See also Foundation Reserve Ins. Co. v. Garcia,* 105 N.M. 514, 734 P.2d 754 (1987). The infringement test determines whether the application of state law over Indian affairs would infringe upon the self-government of the Indians. *Chino,* 90 N.M. at 206, 561 P.2d at 479. In applying the test, the court considers the following criteria: (1) whether the parties are Indian or non-Indian; (2) whether the cause of action arose within Indian country; and (3) what is the nature of the interest to be protected. *Foundation Reserve Ins. Co.,* 105 N.M. at 515, 734 P.2d at 755.

Padilla argues that under the infringement test state jurisdiction over this cause of action is warranted because no unique Indian customs or laws are at stake, the cause of action arose off of Pueblo lands, and the interest to be protected is to guarantee the right to a remedy in state court for breach of contract to those who transact business with a tribal commercial entity outside Indian territory. The inherent weakness in Padilla's argument is that the infringement test applies to individual Indians and is inapplicable to the exercise of state court jurisdiction over an Indian tribe that has invoked its sovereign immunity. In *Santa Clara Pueblo,* the United States Supreme Court recognized the dichotomy between state jurisdiction over individual tribal members and jurisdiction over the tribe *qua* tribe. 436 U.S. at 58–59, 98 S.Ct. at 1677. The court in *Puyallup Tribe, Inc.* also made the same distinction. 433 U.S. at 172–73, 97 S.Ct. at 2621.

Padilla has made no allegations that the contract waives immunity and that, therefore, it confers subject matter jurisdiction upon the district court. Rather, Padilla argues that Pueblo of Acoma d/b/a Sky City Contractors is amenable to suit because it held itself out as a commercial entity to the outside business world and should be estopped from shirking its contractual obligations by cloaking itself with tribal immunity.

■ Padilla's contention that Pueblo of Acoma d/b/a Sky City Contractors is estopped from enjoying the same immunity as the tribe itself cannot withstand scrutiny. We accept the allegations in the complaint that Sky City is an unincorporated association registered to do business in New Mexico. Simply put, it is a subordinate economic organization of the tribe created for commercial purposes. *See White Mountain Apache Indian Tribe v. Shelley,* 107 Ariz. 4, 480 P.2d 654 (1971). No representations to the contrary appear of record. This is not a case in which an Indian tribe has concealed or misrepresented that it was doing business itself off of the reservation. Padilla makes no such claim.

At oral argument, counsel for Acoma disclosed that a non-Indian agent obtained the state contractor's license that was necessary for Sky City to do business in the state. *See* NMSA 1978, § 60–13–12 (Repl. Pamp.1984). From this information, it was surmised further that Padilla might have negotiated his contract with the non-Indian agent. Even if Padilla did negotiate with Sky City's non-Indian agent, a fact not supported by the record, there is nothing in the record to suggest that Sky City hid from Padilla that it was doing the business of the Pueblo. Once the Pueblo asserted its sovereign immunity, it was incumbent upon Padilla to show that the Pueblo

should be equitably estopped to assert immunity from suit. The record says nothing of any representation upon which Padilla reasonably could rely that Sky City either waived its immunity or was acting in a capacity separate and distinct from the tribe. Moreover, given the requirement that waiver of tribal immunity be express and unequivocal, *Santa Clara Pueblo*, 436 U.S. at 58, 98 S.Ct. at 1677, it would be difficult at best to support a claim that a tribe could, through other than express and unequivocal conduct, be equitably estopped to assert its immunity.

■ We turn finally to a consideration of whether business conduct engaged in by a sovereign Indian tribe *off of its reservation* is clothed with the immunity which has been the subject of the foregoing discussion. We believe not. We know of no controlling law that divests the New Mexico courts of jurisdiction over Indian tribes for off-reservation business conduct.[2]

The United States Supreme Court has held the doctrine that "no sovereign may be sued in its own courts without its consent" does not necessarily support a claim of immunity in another sovereign's courts. *Nevada v. Hall*, 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979), *aff'g Hall v. University of Nevada*, 74 Cal.App.3d 280, 141 Cal.Rptr. 439 (1977) (*Hall II*). For reasons well articulated in *Hicks v. State*, 88 N.M. 588, 544 P.2d 1153 (1975), the doctrine of sovereign immunity does not find favor in the common law of this state. It is not necessary to support in the courts of this state any immunity to which another sovereign is not entitled under either acts of Congress or our legislature, or under a specific holding of the United States Supreme Court.

In *Hall v. University of Nevada*, 8 Cal.3d 522, 105 Cal.Rptr. 355, 503 P.2d 1363 (1972), *cert. denied*, 414 U.S. 820, 94 S.Ct. 114, 38 L.Ed.2d 52 (1973) (*Hall I*), the California Supreme Court, reversing the trial court, had held Nevada amenable to suit in California courts on the grounds that sovereignty stops at the state's border. The case was remanded for trial. On certiorari from *Hall II*, the United States Supreme Court did not accept the rationale that sovereignty stops at the state's border, but affirmed, holding that there is no constitutional provision that prohibits a state's exercise of jurisdiction over sovereign sister states. 440 U.S. at 426, 99 S.Ct. at 1191. Therefore, the policy of a state to refrain from the exercise of jurisdiction over a sister state is solely a matter of comity. Because it was the policy of California to allow full tort compensation against itself, California could refuse to recognize a sister state's claim to sovereign immunity for a wrong committed by that state in California.

■ Having found no provision under the supreme law of the land that prohibits a state's exercise of jurisdiction over sovereign Indian tribes for off-reservation conduct, we believe the exercise of jurisdiction over a sovereign Indian tribe for off-reservation conduct is solely a matter of comity. It is the policy of New Mexico to allow breach of written contract actions against the state. NMSA 1978, § 37-1-23. Therefore, we hold that, regardless of where the contract was executed, the district court may exercise jurisdiction over an Indian

2. We note that the extra-territorial nature of tribal conduct is relevant in determining the applicability of state regulation of tribal activities. Tribal activity beyond reservation boundaries would be susceptible to taxation by the state in the "absence of express federal law to the contrary." *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148, 93 S.Ct. 1267, 1270, 36 L.Ed. 2d 114 (1973). Consequently, we would assume that when engaged in off-reservation construction projects the Pueblo of Acoma d/b/a Sky City Contractors, working under a state contrac- tor's license, would be subject to the same regulatory regime as would any other licensed contractor. *See* Construction Indus. Licensing Act, NMSA 1978, §§ 60-13-1 to 59 (Repl.Pamp.1984 & Cum.Supp.1987). Here, however, the issue is not state regulation of the Pueblo's construction projects but, rather, state exercise of jurisdiction over the Pueblo of Acoma once the Pueblo has asserted sovereign immunity from suit brought by a private individual. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978).

tribe when the tribe is engaged in activity off of the reservation as an unincorporated association registered and authorized to do business in this state and is sued in that capacity for breach of a written contract to pay for the performance of contractual obligations accomplished or intended to be accomplished in connection with this off-reservation activity of the tribe.

The dismissal is reversed. We remand to the trial court to proceed in accordance with this opinion.

IT IS SO ORDERED.

STOWERS, and WALTERS, JJ., concur.