904 P.2d 1065

**Troy DeFEO, Plaintiff–Appellee,**

v.

**SKI APACHE RESORT, Apache Tribe
of the Mescalero Reservation,
Defendants–Appellants.**

**No. 16060.**

Court of Appeals of New Mexico.

Sept. 15, 1995.

Certiorari Denied Oct. 19, 1995.

Charles E. Hawthorne, Hawthorne & Hawthorne, P.A., Ruidoso, for Plaintiff–Appellee.

Joe L. McClaugherty, Jere K. Smith, McClaugherty, Silver & Downes, P.C., Santa Fe, for Defendants–Appellants.

## OPINION

APODACA, Chief Judge.

1. Defendant Apache Tribe of the Mescalero Reservation (the Tribe) filed this interlocutory appeal from the trial court's denial of its motion to dismiss Plaintiff Troy DeFeo's (Plaintiff) complaint for lack of jurisdiction. Plaintiff, a non-Indian, sued the Tribe for personal injuries he sustained at Ski Apache Resort (the resort), a ski resort owned and operated by the Tribe. The resort is a single-business entity, located both within and without the boundaries of the Mescalero Apache Tribe Reservation (the reservation). We must decide whether: (1)

the trial court had jurisdiction over a claim made by a non-Indian for personal injuries sustained within the boundaries of an Indian reservation, and (2) the Tribe can waive its sovereign immunity by implication or by engaging in commercial activity. We hold that the Tribe is immune from suit in New Mexico's state courts for personal injuries suffered by a non-Indian in Indian country, absent an unequivocal waiver of immunity by the Tribe. We therefore reverse and remand to the trial court for dismissal of Plaintiff's complaint.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. History of Ski Apache Resort

2. The resort was originally started as a ski facility during the 1961–62 ski season, under a permit from the United States Department of Agriculture on land in the Lincoln National Forest. This land is located adjacent to the reservation. At that time, no portion of the ski area was within the boundaries of the reservation; the resort was operated wholly within the boundaries of the Lincoln National Forest.

3. During the 1962–63 ski season, the resort opened a gondola lift, and the ski area was expanded to include the Apache Bowl, an area lying partially on the reservation. In 1981, a chairlift was constructed on part of the Apache Bowl, entirely on reservation land. In 1992, another chairlift was constructed on Elk Ridge, which also lies on reservation land. The Elk Ridge section includes a lift ticket sales office, restaurant, day lodge, sports shop, and ski lifts, all of which are within the reservation's boundaries.

4. The resort currently has eight chairlifts, one gondola lift, and two surface lifts. Six of the chairlifts, the gondola lift, and the two surface lifts are located in the Lincoln National Forest (off reservation land). Only the Apache Bowl and the Elk Ridge chairlifts are located on the reservation. Before 1992, the location of all lift ticket sales and the beginning of the ski lift system were all on Lincoln National Forest land. The business offices of the resort are located on Lincoln National Forest land.

5. Until 1992, a skier could only reach the reservation by purchasing a ski lift ticket, taking a ski lift, exiting the ski lift, all on the Lincoln National Forest, and then skiing into Apache Bowl. After Elk Ridge opened, a skier could reach the entire ski area from the reservation by buying a ticket at Elk Ridge and taking the chairlift to the ski area.

### B. Nature of Occurrence

6. On March 12, 1992, Plaintiff was injured while exiting from a ski lift at the resort. The accident occurred at the top of Lift No. 6 in Apache Bowl, entirely within the boundaries of the reservation.

7. Plaintiff sued the Tribe for personal injuries in the trial court, which is a state court comprising the Twelfth Judicial District. The Tribe moved to dismiss for lack of subject matter jurisdiction, arguing that New Mexico state courts lacked jurisdiction over this incident because the Mescalero Apache Tribal Courts had exclusive jurisdiction over the lawsuit. The trial court denied the Tribe's motion, stating that the Tribe "ha[d] waived its sovereign right to have its interests protected by its own courts and under its own law by the operation of [the resort]."

8. The Tribe filed an interlocutory appeal with this Court.

## II. DISCUSSION

9. Indian tribes are "domestic dependent nations" that exercise inherent sovereign authority over their members and territories, *Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1, 17, 8 L.Ed. 25 (1831), and " 'retain[ ] their original natural rights' " to exercise self-government, *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 55, 98 S.Ct. 1670, 1675, 56 L.Ed.2d 106 (1978) (quoting *Worcester v. Georgia*, 31 U.S. (6 Pet.) 515, 559, 8 L.Ed. 483 (1832)). Tribal authority extends to the activities of both Indians and non-Indians on reservation lands. *See Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 15–16, 18, 107 S.Ct. 971, 976–977, 978, 94 L.Ed.2d 10 (1987); *see also Montana v. United States*, 450 U.S. 544, 565–66 (1981).

10. One aspect of an Indian tribe's sovereignty and power of self-government is its immunity from suit in state courts. *Santa Clara Pueblo*, 436 U.S. at 58, 98 S.Ct. at 1677. Suits against Indian tribes are barred "absent a clear waiver [of immunity] by the tribe or congressional abrogation." *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509, 111 S.Ct. 905, 909, 112 L.Ed.2d 1112 (1991). A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *Santa Clara Pueblo*, 436 U.S. at 58, 98 S.Ct. at 1677 (internal quotations and citations omitted). This requirement advances the "'overriding goal' of encouraging tribal self-sufficiency and economic development." *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 216, 107 S.Ct. 1083, 1092, 94 L.Ed.2d 244 (1987); *see Oklahoma Tax Comm'n*, 498 U.S. at 510, 111 S.Ct. at 910; *see also American Indian Agric. Credit Consortium, Inc. v. Standing Rock Sioux Tribe*, 780 F.2d 1374, 1378 (8th Cir.1985) ("Indian tribes long have structured their many commercial dealings upon the justified expectation that absent an express waiver their sovereign immunity stood fast."). If an Indian tribe's sovereign immunity stays intact, state courts lack the power to hear or decide the litigation. *See Puyallup Tribe, Inc. v. Department of Game*, 433 U.S. 165, 172, 97 S.Ct. 2616, 2621, 53 L.Ed.2d 667 (1977) ("Absent an effective waiver or consent, it is settled that a state court may not exercise jurisdiction over a recognized Indian tribe.").

11. Plaintiff has neither alleged nor presented any facts of an express waiver of sovereign immunity by the Tribe. In fact, the Tribe expressly reserved the jurisdiction of the Tribe's courts in civil matters. The Revised Constitution of the Mescalero Apache Tribe provides that "[t]he jurisdiction of the Tribal Courts shall extend to all matters, criminal and civil, except where prohibited by the Constitution, laws or treaties of the United States of America." Revised Mescalero Apache Tribe Const. art. XXV, part III, § 1.

12. In an attempt to circumvent the overwhelming authority that vests the Tribe with immunity from suit in state courts for incidents arising in Indian country, Plaintiff argues that, although the accident at issue clearly occurred on the reservation, the location of the accident is irrelevant because the resort is an off-reservation business. Because the resort is a single-business operation located partially on and partially off of the reservation, with the majority of the resort being operated off-reservation, Plaintiff contends that the Tribe engaged in off-reservation business. Relying on our Supreme Court's decision in *Padilla v. Pueblo of Acoma*, 107 N.M. 174, 178, 754 P.2d 845, 849 (1988), *cert. denied*, 490 U.S. 1029, 109 S.Ct. 1767, 104 L.Ed.2d 202 (1989), Plaintiff argues that the Tribe "unequivocally waived its sovereign immunity because the [resort] is an off-reservation activity."

13. In *Padilla*, the Pueblo was doing business as a roofing contractor on off-reservation building projects. When the Pueblo allegedly breached its contract, it was sued in state court by a non-Indian. The Supreme Court rejected the Pueblo's claim of immunity to suit in state courts, stating:

Having found no provision under the supreme law of the land that prohibits a state's exercise of jurisdiction over sovereign Indian tribes for *off-reservation conduct*, we believe the exercise of jurisdiction over a sovereign Indian tribe *for off-reservation conduct* is solely a matter of comity. It is the policy of New Mexico to allow breach of written contract actions against the state. Therefore, we hold that, regardless of where the contract was executed, the district court may exercise jurisdiction over an Indian tribe when the tribe is engaged *in activity off of the reservation* as an unincorporated association registered and authorized to do business in this state and is sued in that capacity for breach of a written contract to pay for the performance of contractual obligations accomplished or intended to be accomplished in connection with this *off-reservation activity* of the tribe.

*Id.* at 179–80, 754 P.2d at 850–51 (emphasis added) (citations omitted). Thus, our Supreme Court concluded that no immunity existed because the Pueblo had engaged in *off-reservation* conduct.

14. *Padilla* is distinguishable from the present case. The cause of action that formed the basis of the suit in *Padilla* arose off-reservation. Here, on the other hand, the cause of action clearly arose *on-reservation.* The trial court concluded that "[t]here [was] no question that the Plaintiff's injuries occurred within the ... boundaries of the Mescalero Apache Reservation." Plaintiff's contention that certain activities of the resort occur off reservation is irrelevant. The controlling factor in this case is the location of Plaintiff's accident and resulting injury. That is where Defendant's employees were allegedly negligent and where that negligence allegedly caused Plaintiff's injury. Just as the critical facts in *Padilla* of contractual non-performance occurred off-reservation, our focus is drawn in the present case to critical facts occurring on-reservation. Therefore, although *Padilla* is distinguishable, our holding is consistent with the underlying premise of *Padilla.*

■ 15. Additionally, Plaintiff argues sovereign immunity does not apply to the Tribe's commercial activity. The Tenth Circuit recently addressed a similar issue involving the sovereign immunity of the Sac and Fox Nation.

> Defendants claim that the [Sac and Fox] Nation is not entitled to sovereign immunity in this case because the commercial activity at issue took place outside the Nation's reservation. Analogizing a Native American tribe to a foreign sovereign, defendants claim that sovereign immunity is inapplicable to a tribe's extraterritorial proprietary activity. Defendants' argument raises an issue that some [United States] Supreme Court justices have discussed in various opinions but which the Court has not yet resolved.
> This Court recently decided a case presenting similar issues. In *Bank of Oklahoma v. Muscogee (Creek) Nation,* 972 F.2d 1166 (10th Cir.1992), a bank brought an interpleader action against two parties, including a Native American tribe. The case centered on the proper disposition of funds related to the tribe's bingo enterprise. The bank first argued that commercial relations between Indian tribes

and non-Indians would be chilled if the Indian tribe were entitled to assert sovereign immunity. Dismissing that contention, we noted that the bank's "policy argument precisely misses the point of sovereign immunity, which is the power of self-determination." Next, the bank attempted to analogize an Indian tribe's sovereign immunity to a foreign sovereign pursuing commercial activity in the United States. We rejected that argument as well, stating that "Indian tribes are not foreign sovereigns, but are 'domestic dependent nations.'"

> *Bank of Oklahoma* did not address the issue of whether the tribe's commercial activity took place off-reservation. *Nevertheless, we do not believe that the location of the commercial activity is determinative.* In *In re Greene,* the Ninth Circuit concluded that "sovereign immunity, as it existed at common law, had an extra-territorial component." We accept the Ninth Circuit's reading of the history of sovereign immunity doctrine and conclude that *the extra-territorial nature of these transactions does not strip the Nation of its right to assert sovereign immunity.*
> The analysis used in *Bank of Oklahoma* controls our decision here. While defendants in this case were free to request a waiver of sovereign immunity before serving on the Commission's Board of Directors, they did not do so. *Without an explicit waiver, the Nation is immune from suit in state court—even if the suit results from commercial activity occurring off the Nation's reservation.*

*Sac & Fox Nation v. Hanson,* 47 F.3d 1061, 1064–65 (10th Cir.1995) (emphasis added) (citations omitted) (footnotes omitted). *See also Oklahoma Tax Comm'n* 498 U.S. at 509–10, 111 S.Ct. at 909; *In re Greene,* 980 F.2d 590, 597 (9th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 681, 126 L.Ed.2d 649 (1992). We consider this reasoning persuasive and reject Plaintiff's contention that tribal sovereign immunity does not exist when the Tribe engages in commercial activity.

16. Having distinguished *Padilla* and adopted the Tenth Circuit's reasoning in *Sac*

& *Fox Nation* concerning tribal immunity from suit in state court, we recognize a difference in approach taken by our Supreme Court in *Padilla* from that taken by the Tenth Circuit in *Sac & Fox Nation.* We also recognize that, in concluding that business conducted by a sovereign Indian tribe off its reservation is not clothed with immunity from suit in state courts, *Padilla,* 107 N.M. at 179, 754 P.2d at 850, *Padilla* appears to conflict with the Tenth Circuit's more recent holding in *Sac & Fox Nation,* which clearly stated that the location of the commercial activity was not determinative and held that an Indian tribe was immune from suit in state courts "even if the suit results from commercial activity occurring off the [Indian tribe's] reservation," *Sac & Fox Nation,* 47 F.3d at 1065. In this regard, we note that *Padilla* was discussed critically by the Ninth Circuit in *In re Greene,* 980 F.2d at 593, 594–95, a case relied on by the Tenth Circuit in *Sac & Fox Nation.*

17. These recent federal decisions might be grounds, at some further point, for a fresh look by our courts at the question of whether a sovereign tribe remains immune from suit in state court, no matter where the activities take place giving rise to the legal claim. In our view, however, the claim in this appeal does not challenge tribal immunity at its outer reaches. The Tribe has asserted an immunity well within historical proportions.

Where the central facts occur within the reservation, our courts are in complete accord with courts from other jurisdictions, and we need go no further. Relying on both *Padilla* and *Sac & Fox Nation,* we conclude the trial court erred in not dismissing Plaintiff's complaint.

## III.  CONCLUSION

18. We hold that the trial court erred in denying the Tribe's motion to dismiss. Plaintiff's accident occurred entirely within the boundaries of the reservation, the Tribe did not waive its sovereign immunity, and consequently the trial court lacked the power to hear or decide the case. The Mescalero Apache Tribal Courts have exclusive jurisdiction over this lawsuit. We reverse and remand with directions that the trial court dismiss Plaintiff's complaint for lack of jurisdiction.

19. **IT IS SO ORDERED.**

PICKARD and BOSSON, JJ., concur.