**Robert M. HOOVER, Jr., Appellant,**

v.

**KIOWA TRIBE OF OKLAHOMA, an Indian Nation, J.T. Goombi, Leonard Anquoe, Maimie Bohay, Allene Woodward, George Tahbone and Charles Hines, Appellees.**

No. 78185.

Supreme Court of Oklahoma.

Dec. 12, 1995.

---

William J. Robinson, Shirk, Work, Robinson & Work, P.C., Oklahoma City, for Appellant.

Nathan H. Young III, Tahlequah, for Appellees.

ALMA WILSON, Chief Justice:

The issue is whether a contract between an Indian tribe and a non-Indian is enforceable in state court when the contract is executed outside of Indian Country. We hold that it is enforceable.

### FACTS

On April 3, 1990, the Kiowa Tribe of Oklahoma, represented by the individuals named in Hoover's complaint,[1] made, executed and delivered to Robert M. Hoover, Jr., a promissory note for $142,500.00, and executed a security agreement on the same date pledging as security 5,000 shares of common stock of Clinton–Sherman Aviation, Inc.[2] The tribe allegedly breached the contract by failing to make any of the agreed payments. After proper notice to the tribe, Hoover sold the stock at public auction.[3] Thereafter, Hoover brought this action in Oklahoma state court. The tribe moved to dismiss due

---

1. The individuals named in Hoover's complaint are J.T. Goombi, Leonard Anquoe, Maimie Bohay, Allene Woodward, George Tahbone and Charles Hines.

2. Clinton–Sherman Aviation, Inc. is an Oklahoma corporation engaged in aircraft repair and

maintenance at the Clinton–Sherman Air Force Base, located outside Indian Country.

3. Hoover himself was the highest bidder and purchased the stock for the sum of $1.00.

to lack of jurisdiction, claiming that Hoover had not exhausted his tribal remedies and that the tribe could not be subjected to state court jurisdiction due to tribal sovereign immunity. The trial court agreed and ruled: (1) the only means by which an Indian Tribe can be sued is if a) Congress of the United States has authorized the suit by specific legislation, or b) the Indian Tribe has clearly waived its sovereign immunity; (2) although the subject contract does not relate to Indian lands or trust lands, the funds to pay the amount contracted for comes from the Kiowa Tribe and the payment affects the tribe's economic interest; (3) to construe the immunity to suit as not applying to suits on liabilities arising out of private transactions would defeat the very purpose of Congress in not relaxing the immunity, namely, the protection of the interests and property of the tribes and the individual Indians; and (4) due to the express clauses in the note and security agreement stating that sovereign immunity was not waived, the state court does not have jurisdiction.

Hoover appealed.

### TRIBAL SOVEREIGN IMMUNITY

The Kiowa Tribe claims that the state of Oklahoma cannot obtain jurisdiction over the tribe because it is vested with sovereign immunity, and therefore the appellant is precluded from suing the tribe. But Hoover answers that the tribe makes no distinction between activities taking place on the reservation, and those taking place off the reservation. He quotes from *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148–149, 93 S.Ct. 1267, 1270, 36 L.Ed.2d 114 (1973) that: "Absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to nondiscriminatory state law otherwise applicable to all citizens of the State."

It is settled that absent express federal law to the contrary, state courts have jurisdiction over the merits of a tribal immunity defense to claims arising under state laws. *Oklahoma Tax Commission v. Graham*, 489 U.S. 838, 109 S.Ct. 1519, 103 L.Ed.2d 924 (1989). It is also settled that state laws may be applied to Indians, even on reservations, "unless such application would interfere with reservation self-government or impair a right granted or reserved by federal law.... State authority over Indians is yet more extensive over activities, such as in this case, not on any reservation." *Organized Village of Kake v. Egan*, 369 U.S. 60, 75, 82 S.Ct. 562, 571, 7 L.Ed.2d 573 (1962).

In *Lewis v. Sac and Fox Tribe of Oklahoma Housing.Authority*, 896 P.2d 503, 508 (Okla.1994), we recognized this test as the preliminary inquiry that must be made whenever Indian interests are included in a controversy. In *Lewis*, two tribal members entered into a contract by which title to their home and land would pass to them on September 1, 1990. When they received a warranty deed conveying the surface rights only, they sued for specific performance and an accounting for all oil and gas revenues the Housing Authority had received since the date of the conveyance. The Authority objected to the jurisdiction of the district court. One of the issues was whether Congress had affirmatively ousted state courts of their concurrent jurisdiction to entertain contract actions involving land transactions between Indian buyers and state-created Indian housing authorities. This Court held that Congress had not, and that Oklahoma has inherent concurrent jurisdiction. *Lewis*, 896 P.2d at 505. But this Court did not deal with the issue of sovereign immunity of the tribe because the issue was not argued on appeal, and had been specifically abandoned. *Lewis*, 896 P.2d at 511.

The Supreme Court of New Mexico, in *Padilla v. Pueblo of Acoma*, 107 N.M. 174, 754 P.2d 845 (1988), *cert. denied* 490 U.S. 1029, 109 S.Ct. 1767, 104 L.Ed.2d 202 (1989), had before it the same issue of whether a state court had jurisdiction over a breach of contract action between a non-Indian and an Indian tribe, the Pueblo of Acoma. The plaintiff was a roofing consultant who had supervised the installation of roofs for the Pueblo of Acoma d/b/a Sky City Contractors, on two building projects located off the Acoma reservation. The Pueblo moved to dismiss the suit for lack of subject matter jurisdiction on the grounds of sovereign im-

munity, which the district court granted. The Supreme Court of New Mexico reversed. That court stated the issue as "whether the state courts have the power and authority to exercise jurisdiction over an Indian tribe that has not waived its sovereign immunity for liability claimed to arise out of the tribe's off-reservation conduct." *Padilla,* 754 P.2d at 847. The court based its analysis in terms of whether the supreme law of the land had divested state courts of subject matter jurisdiction over a private claim against an Indian tribe that asserts sovereign immunity for its off-reservation business conduct.

The New Mexico court held that the exercise of jurisdiction over a sovereign Indian tribe for off-reservation conduct was solely a matter of comity. That court reasoned that since it was the policy of New Mexico to allow breach of written contract actions against the state, the district court may exercise jurisdiction over an Indian tribe engaged in activity off of the reservation for breach of contract. The New Mexico court cited *Nevada v. Hall,* 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979) for the proposition that even though a sovereign may not be sued in its own courts without its consent, that doctrine does not necessarily support a claim of immunity in another sovereign's courts. The Supreme Court of the United States held that there was no constitutional provision that prohibits a state's exercise of jurisdiction over sovereign sister states. *Nevada,* 440 U.S. at 426, 99 S.Ct. at 1191. "Therefore, the policy of a state to refrain from the exercise of jurisdiction over a sister state is solely a matter of comity." *Padilla,* 754 P.2d at 850.

■ Oklahoma, like New Mexico, permits suits for breach of contracts against the state. *See, Cook v. Oklahoma Bd. of Public Affairs,* 736 P.2d 140 (Okla.1987) (general contractor sued Oklahoma Board of Public Affairs for breach of contract when the contractor was removed from the job). Although this state does not have a reservation system like the state of New Mexico, the reasoning used by that court is persuasive.

■ As we explained in *Lewis* and we now reiterate, "[W]henever Indian interests are tendered in a controversy, a state court must make a preliminary inquiry into the nature of the rights sought to be settled. Only that litigation which is explicitly withdrawn by Congress or that which infringes upon tribal self-government stands outside the boundaries of permissible state-court cognizance." *Lewis,* 896 P.2d at 508, footnote omitted. Accordingly, we hold that a contract between an Indian tribe and a non-Indian is enforceable in state court when the contract is executed outside of Indian Country.

The resolution of that issue moots the issue of whether sovereign immunity covers tribal officials acting within their capacity as officers of the tribe. Whether of not the tribal officials, individually, should be held liable for the breach of contract is not before this Court.

REVERSED AND REMANDED.

LAVENDER, HARGRAVE, OPALA and WATT, JJ., concur.

KAUGER, V.C.J., SIMMS and SUMMERS, JJ., dissent.

HODGES, J., not participating.