**FIRST NATIONAL BANK IN ALTUS,
a national banking association,
Appellant,**

v.

**KIOWA, COMANCHE AND APACHE
INTERTRIBAL LAND USE
COMMITTEE, Appellee.**

No. 84301.

Supreme Court of Oklahoma.

March 5, 1996.

Daniel E. McMahan, Denise M. Fletcher, Ivester, Braddock, McMahan, & Duffy, P.C., Altus, for Appellant.

Glenn M. Feldman, O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A., Phoenix, Bob Rabon, Rabon, Wolf and Rabon, Hugo, for Appellee.

HARGRAVE, Justice.

The question before us is whether a contract between a tribal enterprise engaged in commercial activity outside Indian country

and a non-Indian may be enforced in state court. Our recent decision in *Hoover v. Kiowa Tribe of Oklahoma,* 909 P.2d 59 (*Okla.1995* ), is dispositive of the issue. In that case we held that suit on a contract executed outside of Indian country between an Indian tribe and a non-Indian was enforceable in state court.

The Kiowa, Comanche and Apache tribes formed the Intertribal Land Use Committee ("Intertribal Committee"), which was adopted by the governing bodies of the three participating tribes in 1966. Three members from each tribe were designated to serve for an indefinite period until relieved or replaced by a succeeding general council or organization adopted by the tribe. The representatives were vested with the authority of their particular tribal general councils to enter on its behalf into leases, permits, easements, and other transactions, except the sale thereof, relating to tribal lands commonly owned by the three tribes to the extent that the general council of each tribe could so act, and any action taken by the Intertribal Committee had to be concurred in by at least two of the three members of the representatives of each separate tribe.

The First National Bank in Altus (Bank) loaned money to the Intertribal Committee for use in their dressmaking operation in Altus, Oklahoma. The first loans were made in 1990 for $100,000 and $175,000. The Bank's petition states that the contracts were entered into at the bank's offices. The Intertribal Committee represented to the Bank that it was a body corporate, duly organized, validly existing, and in good standing under the tribal constitutions, resolutions and statutes of the Kiowa, Comanche and Apache Indian tribes, and that the promissory notes executed by the Intertribal Committee were duly authorized, executed and delivered by the Committee and were enforceable in accordance with their respective terms under federal, tribal and Oklahoma law, "except as enforceability may be limited by bankruptcy, insolvency, reorganization or other laws affecting the enforcement of creditors rights generally." Bank also obtained an opinion from the Intertribal Committee's legal counsel containing the same language.

In 1991, Bank agreed to provide additional financing to enable the Intertribal Committee to restructure the financing of its sewing operation. Accordingly, the Intertribal Committee executed four promissory notes totalling $865,000.00.

The Intertribal Committee defaulted on the loans and Bank filed a petition in state court alleging that the Intertribal Committee had borrowed and failed to repay approximately $560,034.45, plus interest, seeking judgment against the Intertribal Committee. The individual tribes were not named as defendants. The Intertribal Committee filed a motion to dismiss for lack of jurisdiction based upon tribal sovereign immunity. The trial court dismissed the action for lack of jurisdiction and denied Bank's motion to reconsider. Bank appealed.

During the pendency of the appeal, we handed down our opinion in *Hoover v. Kiowa Tribe of Oklahoma,* 909 P.2d 59 (*Okla.1995* ). The issue in *Hoover* was whether a contract between an Indian tribe and a non-Indian was enforceable in state court when the contract was executed outside of Indian country. We held that it was.

In *Hoover,* the Kiowa tribe, represented by individuals named in the suit, executed a promissory note in favor of Hoover for $142,-500.00, pledging as security 5,000 shares of common stock of Clinton–Sherman Aviation. The tribe allegedly failed to make any of the agreed payments, so after proper notice to the tribe, Hoover sold the stock at public auction. Thereafter, Hoover sued the tribe and named individuals in Oklahoma state court. The tribe moved to dismiss for lack of jurisdiction, based on tribal sovereign immunity. The trial court dismissed the suit. We reversed, holding that state court had jurisdiction. We said:

> "It is settled that absent express federal law to the contrary, state courts have jurisdiction over the merits of a tribal immunity defense to claims arising under state laws. *Oklahoma Tax Commission v. Graham,* 489 U.S. 838, 109 S.Ct. 1519, 103 L.Ed.2d 924 (1989).

We noted that it is clear that state laws may be applied to Indians, even on reserva-

tions unless such application would interfere with reservation self-government or impair a right granted or reserved by federal law, and that state authority over Indians is even more extensive over activities not on any reservation, citing *Organized Village of Kake v. Egan*, 369 U.S. 60, 82 S.Ct. 562, 7 L.Ed.2d 573 (1962).

Recently, in *Lewis v. Sac and Fox Tribe*, 896 P.2d 503, 509 (Okla.1994) we said:

> "Under our system of federalism, a state's sovereignty is concurrent with that of the federal government, subject only to limitations imposed by the Supremacy Clause." (citation omitted)

In that case involving a contract dispute between Indian plaintiffs and a state-created Indian Housing Authority, we reiterated that state courts have inherent authority and thus are presumptively competent to adjudicate claims arising under the laws of the United States. We held that Oklahoma contract and conveyancing law, rather than tribal law, governed settlement of the dispute. We said:

> "In sum, whenever Indian interests are tendered in a controversy, a state court must make a preliminary inquiry into the nature of the rights sought to be settled. Only that litigation which is explicitly withdrawn by Congress or that which infringes upon tribal self-government stands outside the boundaries of permissible state-court cognizance." *896 P.2d at 508.*

Bank in the case at bar, makes similar arguments, citing *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973) *and Puyallup Tribe v. Dept. of Game*, 391 U.S. 392, 88 S.Ct. 1725, 20 L.Ed.2d 689 (1968); *Organized Village of Kake v. Egan*, 369 U.S. 60, 82 S.Ct. 562, 7 L.Ed.2d 573 (1962), *Tulee v. Washington*, 315 U.S. 681, 62 S.Ct. 862, 86 L.Ed. 1115 (1942), *Shaw v. Gibson–Zahniser Oil Corp.*, 276 U.S. 575, 48 S.Ct. 333, 72 L.Ed. 709 (1928). These cases dealt with the issue of tribal sovereignty, concerning among other things, fishing rights, ad valorem tax levies, and, in *Oklahoma Tax Commission v. Chickasaw Nation*, —— U.S. ——, 115 S.Ct. 2214, 132 L.Ed.2d 400 (1995), upholding the state's power to tax income of tribal members who live outside Indian country but earn their wages from employment in Indian country.

*Hoover v. Kiowa Tribe, supra,* is dispositive of the question presented and accordingly, we hold that the trial court erred in dismissing the cause.

## REVERSED AND REMANDED.

ALMA WILSON, C.J., and HODGES, LAVENDER, SIMMS, OPALA and WATT, JJ., concur.

KAUGER, V.C.J., dissents by separate opin. in which SUMMERS, J., joins.

KAUGER, Vice Chief Justice with whom SUMMERS, Justice, joins dissenting:

I dissent from the majority opinion. It directly contradicts the United States Court of Appeals for the Tenth Circuit's recent decision in *Sac and Fox Nation v. Hanson*, 47 F.3d 1061, 1065 (10th Cir.1995) which holds that a tribe's sovereign immunity cannot be inferred from the tribe's engagement in commercial activity; and that without an express waiver of sovereign immunity, a tribe is immune from state court—even if the commercial activity is conducted by a commission or a committee and occurs off of the tribe's reservation.[1]

---

1. Judge Tacha, writing for the majority of the Court in *Sac and Fox Nation v. Hanson*, 47 F.3d 1061, 1065 (10th Cir.1995) said that:

   " 'Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers.' *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978). Thus suits against Indian tribes are barred 'absent a clear waiver by the tribe or congressional abrogation.' *Oklahoma Tax Comm. v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509, 111 S.Ct. 905, 909,

   112 L.Ed.2d 1112 (1991). A waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.' *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114 (1976) (quoting *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969))... [T]he extra-territorial nature of these transactions does not strip the Nation of its right to assert sovereign immunity.... Without an explicit waiver, the Nation is immune from suit in state court even if the suit results from commercial activity occurring off the Nation's reservation."

The Sac and Fox Nation created the Sac and Fox Industrial Development Commission which was made up of a five-member board of directors. When the Commission defaulted on a contract with the United States Army, several of the Commission's former employees sued the board of directors in state court seeking back pay. The board asserted sovereign immunity from the state court proceedings. Here, the Kiowa, Comanche and Apache tribes formed an Inter-tribal Land Use Committee which consisted of three members from each tribe. This tripartite commission is virtually identical to the Sac and Fox Industrial Development Commission created by the Sac and Fox Nation.

I would overrule *Hoover v. Kiowa Tribe,* 909 P.2d 59 (Okla.1995) and follow the teaching of *Sac and Fox Nation v. Hanson,* 47 F.3d 1061, 1065 (10th Cir.1995). A contract between a tribal enterprise engaged in commercial activity outside Indian country and a non-Indian may not be enforced in state court without an express waiver of the tribe's sovereign immunity.