**AIRCRAFT EQUIPMENT COMPANY,**
a joint venture, Appellee,

v.

**The KIOWA TRIBE OF OKLAHOMA,**
Appellant.

No. 82505.

Supreme Court of Oklahoma.

July 16, 1996.

William J. Robinson, Shirk, Work, Robinson & Work, Oklahoma City, for Appellee,

Shelia D. Tims, R. Brown Wallace, Andrews, Davis, Legg, Bixler, Milsten & Price, Oklahoma City, for Appellant.

ALMA WILSON, Chief Justice:

The appellee, Aircraft Equipment Company, sued for breach of an assumption agreement in which the appellant, The Kiowa Tribe of Oklahoma, had agreed to assume the indebtedness of the appellee on a note. The tribe filed a motion to dismiss, which was denied by the district court. The appellee filed a motion for summary judgment, which was granted by the district court. The tribe appealed and the Court of Appeals affirmed the judgment of the district court. We have previously granted certiorari. We vacate the opinion of the Court of Appeals, affirm the judgment of the trial court and grant the motion for appeal-related attorneys' fees with instructions to the trial court to determine the amount due.

■ The sole issue is whether the tribe is subject to a money damage suit for claims arising from commercial activity outside of Indian country.[1] The appellee is the maker of a note payable to Carl E. Gungoll Exploration Joint Venture. In order to purchase all assets owned by the appellee, the tribe agreed to assume the appellee's obligation on a note in the sum of $200,000.00, and upon which $180,000.00 was still due. The tribe failed to make the payments agreed upon, and the appellee made the payments instead. The appellee then sued, and the tribe defended asserting its sovereign immunity.

The Appellant's Suggestion of Additional Authorities recognizes that *Hoover v. Kiowa Tribe of Oklahoma*, 909 P.2d 59 (Okla.1995), cert. denied —— U.S. ——, 116 S.Ct. 1675, 134 L.Ed.2d 779 (1996), is controlling over the single issue raised in the tribe's petition for certiorari. In that case we held "that a contract between an Indian tribe and a non-Indian is enforceable in state court when the contract is executed outside of Indian Country." *Hoover*, 909 P.2d at 62. We found it

---

1. The tribe addresses that single issue in its Petition for Writ of Certiorari. In its Brief in Chief, the tribe raised issues of the legal effect of ultra vires acts of the chairman of the Kiowa Business Committee in executing the agreement, and whether an affidavit presented by the appellee constituted hearsay, and was a self-serving declaration made by an interested party. The petition for certiorari abandons these issues in that the tribe admits in its statement of facts that it bought the corporate shares of Clinton–Sherman Aviation Inc., and as payment for the shares, the tribe executed a guaranty of an existing promissory note that the appellee had made and delivered to a third party not involved in this lawsuit. This admission disposes of the other issues raised in the Brief in Chief, and addressed by the Court of Appeals.

to be settled law "that absent express federal law to the contrary, state courts have jurisdiction over the merits of a tribal immunity defense to claims arising under state laws," and "that state laws may be applied to Indians. . . ." *Hoover,* 909 P.2d at 61.

In *Hoover,* we quoted *Lewis v. Sac and Fox Tribe of Oklahoma Housing Authority,* 896 P.2d 503, 508 (Okla.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 476, 133 L.Ed.2d 405 (1995): "[W]henever Indian interests are tendered in a controversy, a state court must make a preliminary inquiry into the nature of the rights sought to be settled. Only that litigation which is explicitly withdrawn by Congress or that which infringes upon tribal self-government stands outside the boundaries of permissible state-court cognizance." (Footnote omitted.) *Hoover,* 909 P.2d at 62.

Our recent case of *First National Bank in Altus v. Kiowa, Comanche and Apache Intertribal Land Use Committee,* 913 P.2d 299 (Okla.1996), cites *Hoover* as dispositive of that case as well. In the *Altus* case the Kiowa, Comanche and Apache tribes formed the Intertribal Land Use Committee vested with the authority of their particular tribal general councils to enter on their behalf into leases, permits, easements, and other transactions. The bank in Altus loaned money to the Intertribal Committee for use in their dressmaking operation in Altus. The Intertribal Committee defaulted on the loans and the bank sued. The Intertribal Committee filed a motion to dismiss for lack of jurisdiction based upon tribal sovereign immunity, and the trial court dismissed. The bank appealed. This Court reversed and remanded after holding *Hoover* to be dispositive. In referring to the reasoning in *Hoover,* the *Altus* case observed that state laws may be applied to Indians, even on reservations unless such application would interfere with reservation self-government or impair a right granted or reserved by federal law, and that state authority over Indians is even more extensive over activities not on any reservation. *Altus,* 913 P.2d at 300–301, citing *Or-*

*ganized Village of Kake v. Egan,* 369 U.S. 60, 82 S.Ct. 562, 7 L.Ed.2d 573 (1962).[2]

The tribe asserts that *Hoover* is based upon *Padilla v. Pueblo of Acoma,* 107 N.M. 174, 754 P.2d 845 (N.M.1988), and that the New Mexico courts have found that case to be flawed, citing *DeFeo v. Ski Apache Resort,* 120 N.M. 640, 904 P.2d 1065 (N.M.Ct. App.1995), *cert. denied* 120 N.M. 533, 903 P.2d 844 (1995). The *Padilla* case held that the district courts of New Mexico may exercise jurisdiction over an Indian tribe when the tribe is engaged in activity off the reservation. *DeFeo* distinguished its facts from *Padilla,* specifically noting that the activity in question in *DeFeo* involved activity on the reservation. Nevertheless, the New Mexico Court of Appeals observed that *Padilla* appears to conflict with the Tenth Circuit's more recent holding in *Sac & Fox Nation v. Hanson,* 47 F.3d 1061 (10th Cir.1995), a case where the Tenth Circuit affirmed a federal district court decision to enter a permanent injunction prohibiting an Oklahoma district court from holding proceedings involving the Sac & Fox Nation. The New Mexico Court of Appeals quoted four paragraphs from the Tenth Circuit opinion, concluding that the Tenth Circuit clearly stated that the location of the commercial activity was not determinative and that the federal court had held that an Indian tribe was immune from suit in state courts even though the suit resulted from commercial activity off the Indian tribe's reservation. *DeFeo,* 904 P.2d at 1069.

■ This Court has previously held that a federal court's pronouncement on a state law question lacks the force of authority in that it cannot bind this Court. *Stewart v. Amerada Hess Corp.,* 604 P.2d 854, 857 (Okla.1979). We follow the jurisprudence of *Hoover* and *Lewis* because in both cases certiorari was denied by the Supreme Court of the United States. It is only when we are without the guidance of that Court we may choose to follow circuit court case law. Based on the reasoning in the *Hoover* case, we have such guidance. *Hoover* quotes *Mes-*

---

**2.** "[I]n *Williams v. Lee,* 358 U.S. 217, 220, 223, 79 S.Ct. 269, 270, 272, 3 L.Ed.2d 251, we declared that the test of whether a state law could be applied on Indian reservations there was whether the application of that law would interfere with reservation self-government." *Organized Village of Kake v. Egan,* 369 U.S. 60, 67–68, 82 S.Ct. 562, 567, 7 L.Ed.2d 573 (1962).

calero Apache Tribe v. Jones, 411 U.S. 145, 148–149, 93 S.Ct. 1267, 1270, 36 L.Ed.2d 114 (1973) that: "Absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to non-discriminatory state law otherwise applicable to all citizens of the State." Hoover also quotes Oklahoma Tax Commission v. Graham, 489 U.S. 838, 109 S.Ct. 1519, 103 L.Ed.2d 924 (1989) as supporting the fact that absent express federal law to the contrary, state courts have jurisdiction over the merits of a tribal immunity defense to claims arising under state laws. We additionally cited Organized Village of Kake, as referenced above. Having cited those cases, and given the fact that the Supreme Court of the United States has chosen not to grant certiorari to review either the Hoover or Lewis opinions, we decline to follow the reasoning of the 10th Circuit. · Behind this reasoning are important public policy considerations. Our contract law protects parties to contracts from arbitrariness that would otherwise control if parties were free to disregard any contract clauses that a disadvantaged party believed would be enforced to its detriment. Contracts are effective when parties know that the provisions of the contract will be enforced in our district courts. Such a policy protects all of our citizens including the tribes who voluntarily choose to do business with their fellow Oklahoma citizens. If it were otherwise, the tribes would have difficulty finding anyone willing to risk his funds in unenforceable obligations. Such a rule would chill tribal commercial and entrepreneurial business.

 The appellee has filed a motion to award attorneys' fees for appeal-related services. On December 30, 1993, the trial court granted attorneys' fees based upon the motion by Aircraft Equipment Company for attorneys' fees pursuant to 12 O.S.1991, § 936. Section 936 provides:

"In any civil action to recover on an open account, a statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, unless otherwise provided by law or the contract which is the subject to [FN1] the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs."

We have previously held that a party who prevails at trial and who is entitled to § 936 attorneys' fees is also entitled to recover attorneys' fees incurred in successfully defending on appeal. B & P Const. Co. v. Wells, 759 P.2d 208, 209 (Okla.1988). The appeal does not have to be without merit for a prevailing appellate party, who was entitled to attorneys' fees in the district court, to be entitled to attorneys' fees upon appeal. We grant the motion of the appellee. After mandate is issued the trial court is authorized upon notice and adversary hearing to determine the amount of the attorneys' fees that is due the appellee for appeal-related services.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF APPEALS VACATED; JUDGMENT OF THE DISTRICT COURT AFFIRMED; MOTION FOR APPEAL–RELATED ATTORNEYS' FEES GRANTED.

HODGES, LAVENDER, SIMMS, HARGRAVE, OPALA and WATT, JJ., concur.

KAUGER, V.C.J., and SUMMERS, J., dissent.

SUMMERS, Justice, dissenting, with whom Vice Chief Justice KAUGER joins.

I dissent because the majority opinion contravenes the mainstream of contemporary sovereign immunity jurisprudence. It is certainly contrary to Sac & Fox Nation v. Hanson, 47 F.3d 1061, 1065 (10th Cir.1995). In a case arising out of Oklahoma the Tenth Circuit held there that unless expressly waived, a tribe is immune from suit in state court. I would overrule this Court's recent holdings in Hoover v. Kiowa Tribe, 909 P.2d 59 (Okla. 1995), cert. denied, —— U.S. ——, 116 S.Ct. 1675, 134 L.Ed.2d 779 (1996) and First Nat'l Bank v. Kiowa, Comanche and Apache Intertribal Land Use Committee, 913 P.2d 299 (Okla.1996), and follow the reasoning of Hanson.

The majority of jurisdictions (including all the federal ones) which have been faced with

this question have held that regardless of whether the business activities occur in or out of Indian Country, tribal sovereign immunity remains in place unless expressly waived by the tribe. *See, e.g., Sac & Fox Nation v. Hanson, supra; In re Greene,* 980 F.2d 590 (9th Cir.1992); *Federico v. Capital Gaming Int'l Inc.,* 888 F.Supp. 354 (D.R.I. 1995); *Elliott v. Capital Intern. Bank & Trust, Ltd.,* 870 F.Supp. 733 (E.D.Texas 1994); *North Sea Products Ltd. v. Clipper Seafoods, Co.,* 92 Wash.2d 236, 595 P.2d 938 (1979).

The *Hoover* decision has been criticized as "extremely broad, and allows too much room for judicial interpretation to serve as a fair and effective legal standard." Lake, *The Unlimited Sovereign Immunity of Indian Tribal Businesses Operating Outside the Reservation: An Idea Whose Time Has Gone,* 1996 Col.Bus.L.Rev 87 (1996). If the *Hoover* result were based on the desire to make business dealings with tribes more fair and equitable, such a remedy should and could be fashioned by the United States Congress, not this Court. As of yet, Congress has not seen fit to limit the doctrine of sovereign immunity to within-Indian Country activities. The doctrine thus remains in place unless expressly waived by the tribe. And for those tribes wishing to do business with others, and for those others wishing to do business with tribes, an express waiver of immunity can be easily inserted into the agreement.

The majority opinion infers that because certiorari was denied in *Hoover, supra,* and *Lewis v. Sac & Fox Tribe,* 896 P.2d 503 (Okla.1994), *cert. denied,* —— U.S. ——, 116 S.Ct. 476, 133 L.Ed.2d 405 (1995), the law of those cases has somehow been elevated. However, the Supreme Court has held "denial of writ of certiorari imports no expression of opinion upon the merits of the case." *Teague v. Lane,* 489 U.S. 288, 296, 109 S.Ct. 1060, 1067, 103 L.Ed.2d 334 (1989). Denial of certiorari in *Hoover* and *Lewis* does not lead to the conclusion that the United States Supreme Court agrees with or supports those decisions.

Not only did the tribe here fail to waive its sovereign immunity, it expressly reserved it, with this language on the face of the guaranty:

> "Nothing in this Guaranty subjects or limits the sovereign rights of the Kiowa Tribe of Oklahoma."

It is regrettable that this Court chips away at the long established sovereignty of the tribes. Absent an express waiver I would recognize their traditional sovereign immunity as in place to bar this suit.