589 So.2d 1030 (1991)
SEMINOLE TRIBE OF FLORIDA, Petitioner,
v.
Carole Francis HOUGHTALING, Respondent.
No. 91-01508.
District Court of Appeal of Florida, Second District.
December 4, 1991.
*1031 W. Douglas Berry and Melinda J. Brazel of Butler, Burnette & Pappas, Tampa, for petitioner.
H. Irene Higginbotham and Mary E. Mann of Acosta & Mann, St. Petersburg, for respondent.

ON MOTION FOR REHEARING
It appearing that the decision in Southwest Forest Industries v. Hupa (Hoopa) Timber Corp., 151 Cal. App.3d 239, 198 Cal. Rptr. 690 (1984), cited at p. 3 of this court's opinion of October 4, 1991, has been "ordered not published" pursuant to Rule 976, Cal.Rules of Court, upon consideration it is ordered that the opinion of October 4, 1991, is hereby withdrawn and the attached opinion substituted in its place.
Respondent having filed a motion for rehearing and motion for rehearing en banc, upon consideration it is ordered that the motions are hereby denied.
Respondent having filed an "alternative suggestion of certification," which this court treats as a motion for certification of question of great public importance, upon consideration it is ordered that the motion is hereby granted and the attached opinion is further revised to include the certified question as modified by this court.
No additional motions for rehearing will be entertained by this court.
PER CURIAM.
The Seminole Tribe of Florida petitions this court for a writ of certiorari to review an order of the circuit court which denied, on the basis of subject matter jurisdiction, the Tribe's motion to dismiss a negligence action brought against it by respondent Carole Houghtaling. We grant the petition on the authority of Seminole Police Dept. v. Casadella, 478 So.2d 470 (Fla. 4th DCA 1985).
Houghtaling's complaint followed an injury she sustained while a customer at the bingo hall operated by the Tribe on Orient Road, Tampa. The Tribe raised the lack of subject matter jurisdiction based on the defense of sovereign immunity. The numerous Indian tribes historically have been viewed as possessing the common law immunity from suit enjoyed by sovereign powers. See, e.g., Santa Clara Pueblo v. Martinez, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978); Bryan v. Itasca County, Minnesota, 426 U.S. 373, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976); Williams v. Pyramid Lake Paiute Tribe of Pyramid Lake Reservation, 625 F. Supp. 1457 (D.Nev. 1986); Askew v. Seminole Tribe of Florida, Inc., 474 So.2d 877 (Fla. 4th DCA 1985).
This grant of immunity has been the subject of criticism, particularly when a tribe invokes its immunity after engaging in commercial activity with non-Indians. See, e.g., Dry Creek Lodge, Inc. v. Arapahoe and Shoshone Tribes, 623 F.2d 682 (10th Cir.1980), cert. denied, 449 U.S. 1118, 101 S.Ct. 931, 66 L.Ed.2d 847 (1981). Other authorities have viewed such a policy, which prevents dissipation of tribal assets through litigation, as entirely consistent with the continuing need to insure tribal autonomy. See Note, In Defense of Tribal Sovereign Immunity, 95 Harvard L.R. 1058 (1982). Perhaps the most thorough judicial exploration of this issue was undertaken by the Supreme Court of Alaska in Atkinson v. Haldane, 569 P.2d 151 (Alaska 1977).
The Alaska court drew a distinction between "governmental" and "commercial" tribal entities, each deriving from a different section of the Indian Reorganization Act of 1934, 25 U.S.C. § 476. Section 16 of the Act was intended to facilitate the tribal organization of Indians residing on reservations, while section 17 authorized charters of business incorporation to enable the tribes to conduct business. Unless *1032 expressly waiving immunity in its charter,[1] the section 16 tribal government enjoys full immunity from suit to the extent not abrogated by Congress; most but not all section 17 corporations will have a "sue-and-be-sued" clause in the corporate charter. Dixon v. Picopa Construction Co., 160 Ariz. 251, 772 P.2d 1104 (1989). Apart from this distinction, however, it has generally been regarded as immaterial that an Indian tribe was engaged in "an enterprise private or commercial in character, rather than governmental." Maryland Casualty Co. v. Citizens First National Bank of West Hollywood, 361 F.2d 517, 521 (5th Cir.), cert. denied sub nom. Maryland Casualty Co. v. The Seminole Tribe of Florida, Inc., 385 U.S. 918, 87 S.Ct. 227, 17 L.Ed.2d 143 (1966).[2]
The Tribe's petition includes the uncontroverted assertion that the bingo establishment is owned and operated by a section 16 tribal government. Assuming the Atkinson analysis is correct, the Tribe is therefore immune from suit despite its involvement in a commercial enterprise, unless its charter contains an explicit and unequivocal waiver of immunity. We note that the Seminole corporation involved in Maryland Casualty, presumably a different entity from the petitioner, was incorporated pursuant to section 17 of the Indian Reorganization Act, depriving it of immunity under the Atkinson analysis. However, as noted in Atkinson, 569 P.2d at 174, the Fifth Circuit in Maryland Casualty refused to make the governmental/proprietary distinction based on the two subsections of the Act, being "even more receptive to recognition of immunity" than the Alaska court. The record before us lacks adequate evidentiary development of either of these questions. Accordingly, our decision is without prejudice to Houghtaling to demonstrate, after remand, that the Tribe is not a section 16 corporation or that it has within its charter expressly consented to suit.
In her response to the petition Houghtaling suggests a different approach to the jurisdictional question. In 1953 Congress enacted Public Law 280 (28 U.S.C. § 1360), which authorized state civil jurisdiction in actions to which Indians are parties. Five states, later amended to add Alaska, were identified specifically and the provisions of the law made mandatory as to them. As to all other states having Indian populations, including Florida, "the consent of the United States" was given for those states to enact similar provisions. When, in 1968, Public Law 280 was repealed by Congress, the repeal provision specifically excluded those states that had assumed civil jurisdiction. Florida had done so in 1961. § 285.16, Fla. Stat. (1989).
The Florida statute reads as follows:
(1) The State of Florida hereby assumes jurisdiction over criminal offenses committed by or against Indians or other persons within Indian reservations and over civil causes of actions between Indians or other persons or to which Indians or other persons are parties rising within Indian reservations.
(2) The civil and criminal laws of Florida shall obtain on all Indian reservations in this state and shall be enforced in the same manner as elsewhere throughout the state.
The Tribe, however, would draw a distinction between individual Indians  who *1033 may sue or be sued in state court  and Indian tribes who generally may not be sued there. The Tribe's interpretation is bolstered by Bryan v. Itasca County, wherein the Supreme Court found an absence of Congressional intent to confer civil jurisdiction over tribes, but instead viewed Public Law 280 as "intended to redress the lack of adequate Indian forums for resolving private legal disputes between reservation Indians, and between Indians and other private citizens." See also, Long v. Chemehuevi Indian Reservation, 115 Cal. App.3d 853, 171 Cal. Rptr. 733, cert. denied, 454 U.S. 831, 102 S.Ct. 129, 70 L.Ed.2d 109 (1981). At least one Florida court has taken this same position. Seminole Police Dept. v. Casadella.
We are persuaded that the Tribe's analysis that Public Law 280 and section 285.16, Florida Statutes (1989), did not confer civil jurisdiction over Indian tribes is correct. However, we do agree that this case presents an issue of great public importance and so certify to the Florida Supreme Court the following question:
DOES SECTION 285.16, FLORIDA STATUTES (1989), PROVIDE FLORIDA COURTS WITH JURISDICTION TO RESOLVE CIVIL SUITS BROUGHT AGAINST THE SEMINOLE TRIBE?
The petition for writ of certiorari is granted, the order of the circuit court denying the Tribe's motion to dismiss is quashed, and this case is remanded for further proceedings consistent with this opinion.
CAMPBELL, A.C.J., and PATTERSON, J., concur.
ALTENBERND, J., concurs specially.
ALTENBERND, Judge, concurring.
Despite its name, "Seminole Bingo of Tampa" is not a part of Tampa or Florida. It advertises in the Tampa telephone book and along Florida's highways, but it is a separate nation. If you are injured or die on the property of Seminole Bingo of Tampa because of its negligence, you cannot sue in a Florida court and your constitutional rights to due process and access to courts will not help you. If you win the bingo jackpot and Seminole Bingo of Tampa does not choose to pay, apparently you must turn to the tribal council to make your claim against the tribe. Whether that system is fair or unfair, you will have no appeal to this court.
As a good business practice, Seminole Bingo of Tampa could voluntarily agree to be sued in Florida courts. Apparently, it will not. It has competitors who can be sued in Florida. Its Floridian competitors are governed by Florida law and will soon be carefully regulated. See Ch. 91-206, Laws of Fla.; cf. 25 U.S.C.A. §§ 2701-2721 (Supp. 1991). Hopefully, the public will be informed that, when it comes to bingo, "tourist trap" may have a new definition.
NOTES
[1] It is widely recognized that an Indian tribe can consent to be sued. See, e.g., Merrion v. Jicarilla Apache Tribe, 617 F.2d 537 (10th Cir.1980), aff'd, 455 U.S. 130, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982); Namekagon Development Co. v. Bois Forte Reservation Housing Authority, 517 F.2d 508 (8th Cir.1975); Martinez v. Southern Ute Tribe, 150 Colo. 504, 374 P.2d 691 (1962). While most authorities have looked to the tribal charter for expressions of consent; e.g., Fontenelle v. Omaha Tribe of Nebraska, 430 F.2d 143 (8th Cir.1970); others appear to have inferred such consent from the conduct of the tribe. See, e.g., United States v. State of Oregon, 657 F.2d 1009 (9th Cir.1982) (intervention in lawsuit).
[2] In Padilla v. Pueblo of Acoma, 107 N.M. 174, 754 P.2d 845 (1988), cert. denied, 490 U.S. 1029, 109 S.Ct. 1767, 104 L.Ed.2d 202 (1989), the court flatly stated that no immunity existed when the tribe engaged in off-reservation activities, regardless whether the tribe had executed a formal waiver of immunity. But see North Sea Products, Ltd. v. Clipper Seafoods Co., 92 Wash.2d 236, 595 P.2d 938 (1979).