**SAC AND FOX NATION,**
Plaintiff–Appellee,

v.

Honorable Orvan J. HANSON, Jr., Associate District Judge, Ottawa County; Ronald Fixico; Merle Boyd; Jack Thorpe; James Branum, Defendants,

and

**Bruce Willingham, Tom Gray,**
Defendants–Appellants.

No. 93–5186.

United States Court of Appeals,
Tenth Circuit.

Feb. 14, 1995.

G. William Rice, Rice, Withiam, Parmer & Bigler, Cushing, OK (Gregory H. Bigler, with him on the briefs), for plaintiff-appellee.

Samuel C. Stone (R. Brent Blackstock, with him on the briefs) of Stone Jessup, P.C., Tulsa, OK, for defendants-appellants.

Before TACHA, FAIRCHILD,* and LOGAN, Circuit Judges.

TACHA, Circuit Judge.

The Sac and Fox Nation ("the Nation"), a federally recognized tribe of Native Americans residing in Oklahoma, brought suit in district court under 28 U.S.C. § 1362. Claiming sovereign immunity, the Nation sought to enjoin an Oklahoma state court proceeding in which defendants had filed third-party suits against the Nation. Both parties filed motions for summary judgment, and the district court ruled in favor of defendants. After the Nation filed a motion to alter or amend the judgment under Fed. R.Civ.P. 59(e), the district court reversed its previous ruling and entered a permanent injunction prohibiting the Oklahoma state court from holding proceedings involving the Nation. Defendants now appeal. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. BACKGROUND

The facts of this case are undisputed. The Nation created the Sac and Fox Industrial Development Commission ("the Commission") in 1983. Defendants were members of the Commission's five-member board of directors. When the United States Army awarded the Commission a large defense contract in 1989, the Commission established several manufacturing plants, including one in Commerce, Oklahoma. The Commerce plant's employees included persons who were not members of the Nation. In 1990, the Commission defaulted on the defense contract and the Nation shut down the Commission.

In late 1990, a number of the Commission's former employees filed suit against the Commission in state court seeking back pay. The state court entered a default judgment in favor of the employees, which the Commission appealed. These same former employees then filed suit against the Commission's board of directors, including the defendants in this case. The employees alleged violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201–219. In turn, three of the defendants filed third-party actions seeking indemnification from the Commission and the Sac and Fox Nation.

In the midst of the state court proceedings, the Nation filed this action in federal court. The Nation asked the district court to enjoin the state court proceedings on the ground that the doctrine of sovereign immunity protected it from suit. Both sides filed motions for summary judgment. The district court entered an order stating that "the Sac and Fox Nation is not entitled to assert sovereign immunity in the Ottawa County, State of Oklahoma action because the subject matter and alleged chose in action arises from the Nation's engaging in 'external affairs.'" In accordance with that ruling, the court entered judgment in favor of defendants Tom Gray and Bruce Willingham.

In accordance with Fed.R.Civ.P. 59(e), the Nation then filed a motion to alter or amend the judgment. The district court reversed its earlier ruling and entered judgment in favor of the Nation. The court reasoned that sovereign immunity must be explicitly waived and that the Nation had not waived its immunity in this case. Defendants appeal from this ruling.

## II. THE ANTI–INJUNCTION ACT

The first potential bar that the Nation must overcome is the Anti–Injunction Act, 28 U.S.C. § 2283, which reads:

* The Honorable Thomas E. Fairchild, Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.[1]

■ Defendants, however, did not raise the applicability of the Anti–Injunction Act in the district court proceedings. "As a general rule we refuse to consider arguments raised for the first time on appeal unless sovereign immunity or jurisdiction is in question." *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1539 (10th Cir.1992). When the issue raised for the first time on appeal is neither sovereign immunity nor jurisdiction, " '[t]he failure to raise the issue with the trial court precludes review except for the most manifest error.' " *Rademacher v. Colorado Ass'n of Soil Conservation Dist. Medical Benefit Plan*, 11 F.3d 1567, 1572 (10th Cir.1993) (quoting *Hicks v. Gates Rubber Co.*, 928 F.2d 966, 970 (10th Cir.1991)).[2]

■ The Anti–Injunction Act is not a jurisdictional statute; "[i]t merely limits [the district courts'] general equity powers in respect to the granting of a particular form of equitable relief." *Smith v. Apple*, 264 U.S. 274, 279, 44 S.Ct. 311, 313, 68 L.Ed. 678 (1924). Because defendant has not shown manifest error, we will not review the question here. *See Airlines Reporting Corp. v. Barry*, 825 F.2d 1220, 1225 (8th Cir.1987) ("[Appellant]'s failure to assert the [Anti–Injunction] Act in the District Court bars her from obtaining review of this issue on appeal.").

## III. SOVEREIGN IMMUNITY

■ Having determined that the issuance of an injunction in this case is not barred by section 2283, we turn to the merits: whether the Nation was entitled to sovereign immunity in the state court case. We review *de novo* the legal question of when a party can assert sovereign immunity. *Price v. United States*, 7 F.3d 968, 969 (10th Cir.1993).

■ "Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978).[3] Thus, suits against Indian tribes are barred "absent a clear waiver by the tribe or congressional abrogation." *Oklahoma Tax Comm. v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509, 111 S.Ct. 905, 909, 112 L.Ed.2d 1112 (1991). A waiver of sovereign immunity " 'cannot be implied but must be unequivocally expressed.' " *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114 (1976) (quoting *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969)).

■ The district court found that the Nation did not explicitly waive its sovereign immunity, and defendants do not contest this finding. In addition, we find that a waiver of sovereign immunity cannot be inferred from the Nation's engagement in commercial activity. *See American Indian Agric. Credit Consortium, Inc. v. Standing Rock Sioux*

---

1. To repeat, the Nation brought suit under 28 U.S.C. § 1362, which provides that "[t]he district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe ..., wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States." It is possible that section 1362 authorizes federal courts to enter injunctions against state proceedings. *Cf. Moe v. Confederated Salish & Kootenai Tribes*, 425 U.S. 463, 472, 96 S.Ct. 1634, 1641, 48 L.Ed.2d 96 (1976) (stating that 28 U.S.C. § 1341 did not bar an injunction against the collection of a state tax because the Court found "an indication of a congressional purpose [in section 1362] to open the federal courts to the kind of claims that could have been brought by the United States as trustee"). Because we determine that defendants did not raise the Anti–

Injunction Act previously, however, we need not decide that issue here.

2. *Rademacher* also indicates that review of issues raised for the first time on appeal may be possible in "instances where public interest is implicated or where manifest injustice would result." *Rademacher*, 11 F.3d at 1572 (citations omitted).

3. Defendants ask us to abandon the principle of sovereign immunity for Indian tribes despite *Martinez* and a plethora of Tenth Circuit opinions. *See, e.g., Ramey Constr. Co. v. Apache Tribe*, 673 F.2d 315, 319 (10th Cir.1982). We decline defendants' invitation to ignore well-established Supreme Court and Tenth Circuit precedent.

*Tribe,* 780 F.2d 1374, 1378–79 (8th Cir.1985) (holding that a Native American tribe's sovereign immunity cannot be waived by implication in contract actions); *see also Maynard v. Narragansett Indian Tribe,* 984 F.2d 14, 16 (1st Cir.1993) (declining to evaluate several factors to infer a tribe's waiver of sovereign immunity). Thus, if the Nation was entitled to sovereign immunity, it did not waive its immunity from suit. We must therefore address the predicate question of whether the Nation had sovereign immunity in the first instance.

■ Defendants claim that the Nation is not entitled to sovereign immunity in this case because the commercial activity at issue took place outside the Nation's reservation.[4] Analogizing a Native American tribe to a foreign sovereign, defendants claim that sovereign immunity is inapplicable to a tribe's extraterritorial proprietary activity. *See* 28 U.S.C. § 1605(a)(2) (a foreign sovereign is not immune from suit when it engages in commercial activity in the United States). Defendants' argument raises an issue that some Supreme Court justices have discussed in various opinions but which the Court has not yet resolved. *See, e.g., Potawatomi Tribe,* 498 U.S. at 515, 111 S.Ct. at 912–13 (Stevens, J., concurring) ("I am not sure that the rule of tribal sovereign immunity extends to cases arising from a tribe's conduct of commercial activity outside its own territory."); *Pueblo of Acoma v. Padilla,* 490 U.S. 1029, 109 S.Ct. 1767, 104 L.Ed.2d 202 (denial

of certiorari) (White, J., dissenting); *cf. In re Greene,* 980 F.2d 590, 598–600 (9th Cir.1992) (Rymer, J., concurring), *cert. denied,* —— U.S. ——, 114 S.Ct. 681, 126 L.Ed.2d 649 (1994).[5]

This Court recently decided a case presenting similar issues. In *Bank of Oklahoma v. Muscogee (Creek) Nation,* 972 F.2d 1166 (10th Cir.1992), a bank brought an interpleader action against two parties, including a Native American tribe. The case centered on the proper disposition of funds related to the tribe's bingo enterprise. The bank first argued that commercial relations between Indian tribes and non-Indians would be chilled if the Indian tribe were entitled to assert sovereign immunity. Dismissing that contention, we noted that the bank's "policy argument precisely misses the point of sovereign immunity, which is the power of self-determination." *Id.* at 1169. Next, the bank attempted to analogize an Indian tribe's sovereign immunity to a foreign sovereign pursuing commercial activity in the United States. We rejected that argument as well, stating that "Indian tribes are not foreign sovereigns, but are 'domestic dependent nations.'" *Id.* (quoting *Cherokee Nation v. Georgia,* 30 U.S. (5 Pet.) 1, 17, 8 L.Ed. 25 (1831).[6]

*Bank of Oklahoma* did not address the issue of whether the tribe's commercial activity took place off-reservation. Nevertheless, we do not believe that the location of the commercial activity is determinative. In *In re Greene,* the Ninth Circuit concluded that

4. In its order granting summary judgment, the district court stated that the Nation took part in "certain off-reservation commercial activities." It appears that the Nation disputed that fact at summary judgment, however. Because this fact is immaterial to our resolution of this case, we assume *arguendo* that the district court's finding was correct.

5. A number of state courts have also confronted this question. *See, e.g., Dixon v. Picopa Constr. Co.,* 160 Ariz. 251, 772 P.2d 1104, 1109 (1989) ("[S]ubstantial policy considerations militate in favor of recognizing immunity when a tribe conducts tribal business through a tribal economic entity."); *Seminole Tribe v. Houghtaling,* 589 So.2d 1030, 1032 (Fla.Dist.Ct.App.1991) (holding that a tribe was "immune from suit despite its involvement in a commercial enterprise"), *aff'd,* 611 So.2d 1235 (Fla.1993); *Padilla v. Pueblo of Acoma,* 107 N.M. 174, 754 P.2d 845, 850 (1988)

("We know of no controlling law that divests the New Mexico courts of jurisdiction over Indian tribes for off-reservation business conduct."), *cert. denied,* 490 U.S. 1029, 109 S.Ct. 1767, 104 L.Ed.2d 202 (1989); *North Sea Products, Ltd. v. Clipper Seafoods Co.,* 92 Wash.2d 236, 595 P.2d 938, 942 (1979) (en banc) (Rossellini, J., concurring) (stating that, while sovereign immunity is the rule for commercial activity outside Indian territory, "the present rule is unjust, unwise and unreasonable").

6. The Fifth Circuit has also determined that sovereign immunity applies to a Native American tribe's commercial activities. *See Maryland Casualty Co. v. Citizens Nat'l Bank,* 361 F.2d 517, 521 (5th Cir.) ("The fact that the Seminole Tribe was engaged in an enterprise private or commercial in character, rather than governmental, is not material."), *cert. denied,* 385 U.S. 918, 87 S.Ct. 227, 17 L.Ed.2d 143 (1966).

"sovereign immunity, as it existed at common law, had an extra-territorial component." *In re Greene,* 980 F.2d at 596. We accept the Ninth Circuit's reading of the history of sovereign immunity doctrine and conclude that the extra-territorial nature of these transactions does not strip the Nation of its right to assert sovereign immunity.[7]

The analysis used in *Bank of Oklahoma* controls our decision here. While defendants in this case were free to request a waiver of sovereign immunity before serving on the Commission's Board of Directors, they did not do so. Without an explicit waiver, the Nation is immune from suit in state court—even if the suit results from commercial activity occurring off the Nation's reservation.

## IV. CONCLUSION

Because the issue was not presented to the trial court, we decline to review whether the district court's issuance of the injunction was proper under the Anti–Injunction Act. We find no error in the district court's conclusion that the Nation was entitled to sovereign immunity in the state action. The judgment of the district court is therefore **AFFIRMED.**

---

7. *But cf. Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 148–49, 93 S.Ct. 1267, 1270–71, 36 L.Ed.2d 114 (1973) (stating that, in the context of state taxation, "Indians going beyond reservation boundaries have generally been held subject to

non-discriminatory state law otherwise applicable to all citizens of the State").