903 So.2d 353 (2005)
SEMINOLE TRIBE OF FLORIDA, a federally recognized Indian tribe, d/b/a Seminole Indian Casino, Petitioner,
v.
Angela McCOR, Respondent.
No. 2D04-4062.
District Court of Appeal of Florida, Second District.
June 15, 2005.
*354 Donald A. Orlovsky of Kamen & Orlovsky, P.A., West Palm Beach, for Petitioner.
*355 Richard D. Giglio of Maney & Gordon, Tampa, for Respondent.
CANADY, Judge.
The Seminole Tribe of Florida seeks certiorari review of the trial court's order denying the Tribe's motion to dismiss or for summary judgment. The Tribe's motion was based on the assertion that the Tribe was, by virtue of its status as a federally recognized Indian tribe, immune from the suit for negligence brought by Angela McCor for injuries she allegedly suffered at the gaming facility located on the Tribe's Tampa reservation. Because the trial court's denial of the Tribe's motion was a clear departure from the essential requirements of law resulting in injury to the Tribe which cannot be remedied on appeal, we grant the Tribe's petition.

I. Background

McCor's action against the Tribewhich was initiated in August 2002seeks damages for injuries she allegedly sustained from being struck by a chair while she was at the Tribe's gaming facility in Tampa. In November 2002, the Tribe filed a motion to dismiss for lack of subject matter jurisdictionbased on tribal sovereign immunityalong with supporting affidavits.
In December 2003, McCor filed an amended complaint. The amended complaintlike the initial complaintalleged that at the time of the incident at issue the Tribe was insured by St. Paul Fire and Marine Insurance Company for $1,000,000 in liability coverage. The complaint further alleged that by possessing the insurance coverage the Tribe had waived its sovereign immunity to the extent of the policy coverage. After answering the amended complaint and further asserting its tribal sovereign immunity by way of an affirmative defense, the Tribe, in May 2004, filed its motion to dismiss or, in the alternative, for summary judgment. In its motion, the Tribe asserted that it "is entitled to immunity from suit in all state and federal courts under the doctrine of tribal sovereign immunity," that the Tribe "has not waived sovereign immunity for any of McCor's claims in this litigation," and that the circuit court therefore "lacks subject matter jurisdiction over this suit."
In support of this motion, the Tribe relied on the same affidavits that had been filed in November 2002. These affidavits were executed by Max B. Osceola, Jr., a member of the Tribal Council, and by Mary Jane Willie, the "Official Tribal Clerk." The Osceola affidavit states that the Tribe "was formally organized for the common welfare of its tribal members in accordance with the provisions of section 16 of the Indian Reorganization Act of 1934 and has since been federally recognized and designated as an organized Indian tribe."[1] The affidavit also recites: "At no time, and under no circumstances, have any claims or a waiver of tribal sovereign immunity respecting [a claim such as McCor's] been approved by the Tribal Council." Attached to the Osceola affidavit are copies of the amended constitution and bylaws of the Tribe and of Tribal Ordinance C-01-95. As the affidavit states, the constitutionthe Tribe's charter"describes the rights of the [Tribe] as a body politic to determine its destiny through self-government" and provides that the "Tribe conducts its governmental business through an elected governing councilThe Tribal Council of the Seminole Tribe of Florida." The Tribal Ordinance, which was adopted March 16, 1995, by the Tribal Council, recites that the Tribe was "formally organized ... in accordance with the provisions of Section 16 of the Indian Reorganization Act of 1934." *356 The ordinance states "that the Seminole Tribe of Florida ... [is] immune from suit brought by any third-party in any state or federal court without the clear and unequivocal consent of the Seminole Tribe of Florida or the clear, express and unequivocal consent of the United States Congress. This immunity shall apply whether the Tribe ... is engaged in a private enterprise or governmental function." The ordinance further provides
that the consent of the Seminole Tribe of Florida to waive its immunity from suit in any state or federal court may only be accomplished through the clear, express and unequivocal consent of the Seminole Tribe of Florida pursuant to a resolution duly enacted by the Tribal Council of the Seminole Tribe of Florida sitting in legal session. Any such resolution purporting to waive sovereign immunity as to the Seminole Tribe of Florida... shall specifically acknowledge that the Seminole Tribe of Florida is waiving its sovereign immunity [on] a limited basis and describe the purpose and extent to which such waiver applies. The failure of the Tribal Council resolution to contain such language shall render it ineffective to constitute a waiver of tribal sovereign immunity.
The Willie affidavit states that Willie is "the tribal official who has been appointed... to retain all resolutions and ordinances duly enacted by the Tribal Council." The Willie affidavit further recites that a search of the Tribe's records revealed "that at no time and under no circumstances has the Tribal Council enacted any resolution [or] ordinance or taken any other governmental action to waive tribal sovereign immunity in connection with any claim of any individual for personal injuries against the" Tribe. The affidavit also states specifically that the Tribe has never "agreed to be bound or governed by any state or federal law regarding any claim raised by Angela McCor." Attached to the Willie affidavit are copies of the amended constitution and bylaws and of the Tribal Ordinance, which the affidavit states are "genuine" copies.
After a hearing on August 2, 2004, the trial court entered an order denying the Tribe's motion. In its order, the trial court stated: "[I]t is clear that the record before me lacks sufficient evidentiary development to determine whether or not the tribal charter contains an explicit and unequivocal waiver of its immunity, and whether the tribe intended to waive its immunity through the purchase of liability insurance." The trial court denied the Tribe's motion without prejudice, "to allow the plaintiff to develop these issues through additional discovery."

II. Argument on Appeal

The Tribe argues that the record before the trial court established that the Tribe was entitled to sovereign immunity and that the trial court therefore did not have subject matter jurisdiction over McCor's claim. Certiorari relief is appropriate, according to the Tribe, because it is a clear departure from the essential requirements of law for a trial court to compel the Tribe to defend a lawsuit over which the trial court has no subject matter jurisdiction. McCor contends that the Tribe "expressly waived sovereign immunity by purchasing an insurance policy that provided coverage for negligent acts." McCor further argues that "several questions still exist as to the facts surrounding the [T]ribe's purchase of liability coverage," and that "[i]t is still unclear at this time when, how and most importantly, why such coverage was purchased by the [Tribe]." The Tribe replies that the purchase of liability insurance by the Tribe as a matter of law does not constitute a waiver of the Tribe's sovereign immunity.

*357 III. Analysis

A. Procedural Matters

At the outset, we address two procedural questions: (1) whether the Tribe's claim that the trial court lacked subject matter jurisdiction should have been raised by way of a motion for summary judgment or by way of a motion to dismiss; and (2) whether there is a basis for this court to exercise its common law certiorari jurisdiction in the circumstances present here.

1. Challenging Subject Matter Jurisdiction

The question of whether a court lacks subject matter jurisdiction over a claim because that claim is barred by tribal sovereign immunity is a threshold question that is properly presented by way of a motion to dismiss, rather than by a motion for summary judgment. A motion to dismiss for lack of subject matter jurisdiction is analogous to a motion to dismiss for lack of personal jurisdiction. See Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla.1989) (setting forth process for determining factual issues raised by motion to dismiss for lack of personal jurisdiction). In considering a motion to dismiss challenging subject matter jurisdiction, a trial court may properly go beyond the four corners of the complaint and consider affidavits. See Barnes v. Ostrander, 450 So.2d 1253, 1254 (Fla. 2d DCA 1984) ("Speaking motions with supporting affidavits may be filed in order to attack jurisdiction over the subject matter"); see also Holland v. Anheuser Busch, Inc., 643 So.2d 621, 623 n. 2 (Fla. 2d DCA 1994) (citing Barnes and recognizing that "under certain circumstances a trial court, on a motion to dismiss supported by affidavit, has the authority to decide ultimate issues of fact relating to ... jurisdiction over the subject matter"). Challenges to subject matter jurisdiction raised by Indian tribes asserting tribal immunity have regularly been made by way of motions to dismiss. See Seminole Tribe v. Houghtaling, 589 So.2d 1030, 1031 (Fla. 2d DCA 1991); Seminole Police Dep't v. Casadella, 478 So.2d 470, 471 (Fla. 4th DCA 1985). We therefore conclude that it was proper for the trial court to consider the Tribe's motion to dismiss with the accompanying affidavits and not appropriate to consider the motion for summary judgment. But see Mancher v. Seminole Tribe, 708 So.2d 327, 328-29 (Fla. 4th DCA 1998) (holding that challenge to jurisdiction based on tribal sovereign immunity was "not amenable to resolution by motion to dismiss because there are disputed factual questions").

2. Certiorari Jurisdiction

We have previously exercised our common law certiorari jurisdiction to review a trial court order denying a motion to dismiss where the motion was based on the assertion that the trial court lacked subject matter jurisdiction because the suit was barred by tribal sovereign immunity. See Houghtaling, 589 So.2d at 1031; see also Casadella, 478 So.2d at 471 (granting common law writ of certiorari and quashing trial court order that denied motion to dismiss where defendants were "a derivative economic organization and agent of the Seminole Tribe of Florida" which "were immune from suit under the doctrine of sovereign immunity"); cf. Miccosukee Tribe of Indians v. Napoleoni, 890 So.2d 1152, 1153-54 (Fla. 1st DCA 2004) (granting "writ of prohibition, barring further proceedings," where workers' compensation claim was brought against Indian tribe that enjoyed sovereign immunity). Certiorari jurisdiction exists in this context because the inappropriate exercise of jurisdiction by a trial court over a sovereignly-immune tribe is an injury for which there is no adequate remedy on appeal. Tribal *358 sovereign immunity, like the qualified immunity enjoyed in civil rights cases by public officials, "involves `immunity from suit rather than a mere defense to liability,'" which is an "entitlement" that "`is effectively lost if a case is erroneously permitted to go to trial.'" Tucker v. Resha, 648 So.2d 1187, 1189 (Fla.1994) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)).

B. Tribal Sovereign Immunity

"As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." Kiowa Tribe v. Mfg. Techs., Inc., 523 U.S. 751, 754, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998). Congressional waiver or abrogation of tribal sovereign immunity must be unequivocal and does not arise by implication. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). Likewise, a waiver of tribal immunity by a tribe must be clear. Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe, 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991).
"Absent an effective waiver or consent, it is settled that a state court may not exercise jurisdiction over a recognized Indian tribe." Puyallup Tribe, Inc. v. Dep't of Game, 433 U.S. 165, 172, 97 S.Ct. 2616, 53 L.Ed.2d 667 (1977); see also Gallegos v. Pueblo of Tesuque, 132 N.M. 207, 46 P.3d 668, 673 (2002) ("Without an unequivocal and express waiver of sovereign immunity or congressional authorization, state courts lack the power to entertain lawsuits against tribal entities."); Cupo v. Seminole Tribe, 860 So.2d 1078, 1079 (Fla. 1st DCA 2003) (affirming dismissal of workers' compensation claim based on lack of subject matter jurisdiction over tribe where claimant "failed to show a clear, express and unmistakable waiver of sovereign immunity by the Tribe, or any Act of Congress abrogating the Tribe's sovereign immunity").
Here, the record demonstrates, without dispute, that the Tribe is an Indian tribe organized pursuant to section 16 of the Indian Reorganization Act of 1934. "Unless expressly waiving immunity in its charter, the section 16 tribal government enjoys full immunity from suit to the extent not abrogated by Congress." Houghtaling, 589 So.2d at 1031-32 (footnote omitted).[2] The Tribe's constitutionits chartercontains no provision waiving the Tribe's sovereign immunity. McCor does not claim that Congress has abrogated the sovereign immunity of the Tribe or that the Tribe's charter contains a waiver provision. Instead, McCor contends that the Tribe has waived its immunity by purchasing liability insurance. The Tribe does not assert that a waiver of immunity must be set forth in the text of the Tribe's constitution. The Tribe argues instead that Tribal Ordinance C-01-95which was adopted under the governing structure established by the constitutionsets forth the exclusive means of accomplishing a waiver of the Tribe's immunity: a resolution of the Tribal Council "specifically acknowledg[ing] that the [Tribe] is waiving its *359 sovereign immunity on a limited basis and describ[ing] the purpose and extent to which such waiver applies." The Tribe relies on the absence of any such resolution in order to establish that the Tribe has not waived its immunity.

C. The Waiver-by-Insurance Issue

In Atkinson v. Haldane, 569 P.2d 151, 167-170 (Alaska 1977), the Alaska Supreme Court rejected a claim that a tribe's purchase of liability insurance constituted a waiver of the tribe's immunity. The court held that "a waiver of sovereign immunity should [not] be implied from an act which was intended to protect the tribal resources," id. at 169, concluding that an implication that a tribe's "sovereign immunity was waived to the extent of its insurance coverage would operate to defeat the purpose of the immunity," id. at 170.
The First District reached a similar conclusion in Napoleoni, 890 So.2d at 1153, rejecting an argument that a tribe's purchase of workers' compensation insurance "is an explicit waiver of tribal immunity." In reaching this conclusion, the court observed that the tribe had "explicitly rejected waiver" of its tribal immunity by its adoption of a "resolution establishing its own tribal workers' benefit system." Id. at 1153-54.
We agree with the holdings of Atkinson and Napoleoni. The purchase of insurance by an Indian tribe is not sufficient to demonstrate a clear waiver by the tribe of its sovereign immunity. Although it may be a plausible inference that the purchase of insurance indicates an intention to assume liability and waive tribal immunity, such an inference is not a proper basis for concluding that there was a clear waiver by the Tribe. Rather than indicating an intention to waive immunity, the purchase of insurance may simply be a measure to provide protection for the Tribe's assets against the possibility that the Tribe's immunity will be abrogated or ignored. We therefore conclude that the purchase of insurance by a tribe does not manifest a clear intention of the tribe to forgo the benefits of its status under federal law as a sovereignly-immune entity. To hold otherwise would risk penalizing a tribe for taking action to protect its resources against the potential that the tribe's sovereign immunity will be ignored or abrogated.
In this case, the record shows that the Tribe has established, pursuant to its constitution, a specific procedure which must be followed to accomplish a waiver of the Tribe's sovereign immunity. Under that procedure, the purchase of liability insurance by the Tribe would result in a waiver of the Tribe's immunity only if the Tribal Council adopted a resolution specifically acknowledging the waiver in conjunction with the purchase of the liability insurance. The record before us shows that no such resolution has been adopted.

D. The Insufficient-Evidentiary-Development Issue

We reject the trial court's conclusion that the record "lacks sufficient evidentiary development to determine whether or not the tribal charter contains an explicit and unequivocal waiver of its immunity." The unchallenged affidavits and the accompanying tribal documents speak for themselves. They make clear beyond any doubt that the Tribe has not taken action pursuant to its tribal charter to waive its sovereign immunity. Similarly, we reject the trial court's conclusion that the record is insufficient to determine "whether the [T]ribe intended to waive its immunity through the purchase of liability insurance." McCor points to no potential evidence that would be relevant to that issue. And the affidavits and tribal documents *360 submitted by the Tribe negate any suggestion that the Tribe's purchase of liability insurance was intended to act as a waiver.
In the instant case, the basis for granting the Tribe's motion to dismiss was established. The circumstances here are entirely different from those present in Houghtaling, where the case was remanded for further proceedings because the record lacked "adequate evidentiary development." 589 So.2d at 1032. In Houghtaling, there is no indication that the record before the trial court contained any affidavits establishing the facts concerning whether there had been a waiver of tribal sovereign immunity. Here, the record before the court contains unrebutted evidence establishing that the Tribe has not waived its immunity.
Once the Tribe submitted affidavits showing that it was a sovereignly-immune entity and had not waived its immunity, the burden was on McCor to rebut the Tribe's affidavits. See Venetian Salami Co., 554 So.2d at 502 (stating that once a defendant contesting personal jurisdiction "file[s] affidavits in support of his position," the plaintiff then has the burden "to prove by affidavit the basis upon which jurisdiction may be obtained"). McCor failed to meet this burden.
There is no ground for the argument that McCor did not have a sufficient opportunity to obtain available evidence to rebut the evidence presented by the Tribe. More than a year and a half passed between the Tribe's filing of its affidavits and the trial court's consideration of the Tribe's motion. And the Tribe's motion itself was pending for nearly three months before it was heard by the trial court. Accordingly, any inadequacy of the "evidentiary development" on the waiver issue must be attributed to McCor, not to the Tribe.

IV. Conclusion

The Tribe demonstrated that it was entitled to tribal sovereign immunity and that the trial court was without subject matter jurisdiction over the claim brought by McCor. In failing to grant the Tribe's motion to dismiss, the trial court violated a clearly established principle of law, resulting in injury to the Tribe that cannot be remedied on appeal. We therefore grant the Tribe's petition, quash the trial court's order denying the motion to dismiss, and direct that the trial court dismiss McCor's complaint.
Petition granted; order quashed.
NORTHCUTT, J., Concurs.
ALTENBERND, C.J., Concurs with opinion.
ALTENBERND, Chief Judge, Concurring.
I have previously reached the same conclusion that we reach today. See Seminole Tribe of Fla. v. Houghtaling, 589 So.2d 1030 (Fla. 2d DCA 1991) (Altenbernd, J., concurring). The Seminole Tribe has every right to raise the defense of sovereign immunity concerning the claim of a person who is injured while visiting a traditional reservation to observe and learn about the culture of native Americans. In this case, however, the Seminole Tribe has created a large tourist attraction along Interstate 4 known as the Seminole "Hard Rock" Casino. It is adjacent to the State Fairgrounds and advertises itself as a hotel and casino on Orient Road in Tampa, Florida. But this casino is not legally in Florida.[3]
*361 The average tourist has no idea that her Florida constitutional rights to access to the courts and to trial by jury do not apply to any claims that may arise while she visits the hotel and casino. The Tribe itself does not post warnings that its tourist attraction is exempt from these basic Florida constitutional protections. In this case, the Seminole Tribe and, indirectly its commercial insurance company, are raising the jurisdictional bar to prevent judicial resolution of a relatively minor and defensible personal injury claim. However, they could raise the same bar for a serious wrongful death action.
Although the insurance policy is not in our record, many general liability policies issued to governmental bodies contain an agreement that the insurance company will not itself rely upon the government's sovereign immunity, but these clauses do not prevent the governmental entity from raising its sovereign immunity. The rule of law requires this court to reach this outcome, but hopefully the Seminole Tribe of Florida will eventually conclude that this litigation tactic is not the best policy to promote a profitable business.
NOTES
[1] The current version of section 16 is found at 25 U.S.C.A. § 476 (2004).
[2] In Houghtaling v. Seminole Tribe, 611 So.2d 1235, 1239 (Fla.1993), the supreme court affirmed this court's decision granting the Tribe's petition for certiorari. Consistent with our decision, the supreme court stated:

[W]e hold that the Seminole Tribe is immune from suit and that Florida courts lack subject matter jurisdiction unless: (1) the Seminole Tribe has consented to suit in its section 16 charter, or (2) the organization owning the Bingo Hall is a section 17 corporate entity whose corporate charter allows it to be sued.
Id. In the instant case, there is no suggestion that the McCor suit is against "a section 17 corporate entity."
[3] History records that the Seminole Tribe purchased this land about twenty years ago to use as a burial ground and museum for Seminole bones and artifacts that were unearthed during the construction of the Fort Brooke Parking Garage in downtown Tampa. James W. Covington, The Seminoles of Florida 255 (University Press of Fla.1993).