DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SEMINOLE TRIBE OF FLORIDA,**
Petitioner,

v.

**NICOLAS A. MANZINI,**
Respondent.

No. 4D22-3077

[June 7, 2023]

Petition for Writ of Prohibition to the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michele Towbin-Singer, Judge; L.T. Case No. CACE21-019185.

Mark D. Schellhase, Jordan S. Kosches, and Emily L. Pineless of GrayRobinson, P.A., Boca Raton, for petitioner.

Nicolas A. Manzini, West Miami, pro se.

CONNER, J.

Petitioner, Seminole Tribe of Florida (the "Seminole Tribe" or the "Tribe"), petitions for a writ of prohibition to prohibit the trial court from proceeding further with a negligence action filed against it, asserting sovereign immunity. After a hearing on the Seminole Tribe's motion to dismiss based on sovereign immunity, the trial court entered an order abating the negligence action until a specific date, rather than <u>dismissing</u> the action.[1] Subsequently, the trial court stayed the abatement order pending this Court's review. We explain our reasoning in granting the petition.

*Background*

As a federally recognized Indian tribe, the Seminole Tribe is entitled to sovereign immunity over all claims unless such immunity is abrogated by

---

[1] Because the trial court did not affirmatively deny the motion to dismiss, appellate review of the nonfinal order pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(F)(iii) is not available.

Congress or waived by the Seminole Tribe. In 2010, the Seminole Tribe entered a gaming compact with the State of Florida ("the Compact") that provides a limited waiver of sovereign immunity for individuals claiming to have been injured at one of the Seminole Tribe's gaming facilities if claimants follow the Compact's specific procedures.

The Compact's Section VI.D. pertains to tort remedies for patrons injured at a Seminole Tribe casino. It provides:

> 1. <u>A Patron who claims to have been injured</u> after the Effective Date at one of the Tribe's Facilities where Covered Games are played <u>is required to provide written notice to the Tribe's Risk Management Department or the Facility</u>, in a reasonable and timely manner, but in no event later than three (3) years after the date of the incident giving rise to the claimed injury occurs, or the claim shall be forever barred.
>
> 2. <u>The Tribe shall have thirty (30) days to respond to a claim made by a Patron. If the Tribe fails to respond within thirty (30) days, the Patron may file suit against the Tribe</u>. . . .
>
> 3. <u>Upon receiving written notification of the claim, the Tribe's Risk Management Department shall forward the notification to the Tribe's insurance carrier</u>. . . .
>
> 4. <u>The insurance carrier will handle the claim to conclusion. If the Patron and the Tribe and the insurance carrier are not able to resolve the claim in good faith within one (1) year after the Patron provided written notice to the Tribe's Risk Management Department or the Facility, the Patron may bring a tort claim against the Tribe in any court of competent jurisdiction</u> . . . . <u>A Patron's notice of injury to the Tribe pursuant to Section D.1. of this Part and the fulfillment of the good faith attempt at resolution pursuant to Sections D.2. and 4. of this Part are conditions precedent to filing suit</u>.
>
> 5. <u>For tort claims of Patrons made pursuant to Section D. of this Part, the Tribe agrees to waive its tribal sovereign immunity to the same extent as the State of Florida waives its sovereign immunity, as specified in sections 768.28(1) and (5), Florida Statutes</u> . . . .
>
> 6. Notices explaining the procedures and time limitations with respect to making a tort claim shall be prominently displayed

in the Facilities, posted on the Tribe's website, and provided to any Patron for whom the Tribe has notice of the injury or property damage giving rise to the tort claim. Such notices shall explain the method and places for making a tort claim, including where the Patron must submit the form, that <u>the process is the exclusive method for asserting a tort claim</u> arising under this section against the Tribe, that <u>the Tribe and its insurance carrier have one (1) year from the date the Patron gives notice of the claim to resolve the matter and after that time the Patron may file suit in a court of competent jurisdiction, that the exhaustion of the process is a pre-requisite to filing a claim in state court, and that claims which fail to follow this process shall be forever barred</u>.

(Emphasis added).

Nicolas Manzini (the "respondent") reported his initial claim to the Seminole Tribe in August 2021, followed in September 2021 by a notice using a Compact-approved claim form. The respondent attached a draft complaint to his claim form notice, seeking damages and declaratory and injunctive relief related to two causes of action under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and the Florida Civil Rights Act ("FCRA").

The Seminole Tribe forwarded the claim form to its insurance carrier. The insurance carrier denied the claim in October 2021, prompting the respondent to file suit four days later, asserting the same two causes of action alleged in the draft complaint attached to the Compact claim form.[2]

In February 2022, the respondent filed with the Seminole Tribe a Compact tort notice form with an addendum alleging that the Seminole Tribe had not been following COVID-19 safety protocols since May 2021, and further alleging:

[T]he Tribe has continued to falsely advertise its so-called COVID-19 **"Safe and Healthy"** program which bills itself as providing gaming patrons with "*good clean fun*" – an illusory promise that endangers patrons like me with pre-existing health conditions with a reckless exposure to the COVID-19 virus. This is a violation of the Florida Deceptive and Unfair

---

[2] The Seminole Tribe does not dispute that the respondent properly filed suit on the FDUTPA and FCRA claims.

Trade Practices Act (FDUTPA) which is nothing more and nothing less than a codification of Florida tort law.

On February 25, 2022, the Tribe acknowledged receipt of the amended notice and advised it would review the allegations.

Shortly after filing his initial complaint, the respondent filed an amended complaint, which the Seminole Tribe moved to dismiss. The trial court granted the motion to dismiss the amended complaint, dismissing the FDUTPA count with prejudice but allowing the respondent to file an amended FCRA count.

In June 2022, the respondent filed his second amended complaint. Therein, the respondent reasserted his FCRA count and added two additional causes of action: one for common law negligence for having contracted COVID-19 due to an exposure at the Seminole Tribe's casino, and the other for intentional infliction of emotional distress. Before the hearing on the motion to dismiss, the respondent voluntarily dismissed his FCRA count.

The trial court initially granted the motion to dismiss the second amended complaint orally, concluding the count for intentional infliction of emotional distress failed to state a cause of action and the common law negligence claim was premature and barred by sovereign immunity. However, the respondent sought reconsideration before the trial court entered a written order. After entertaining further argument, the trial court maintained its ruling as to the intentional infliction of emotional distress count but reversed its decision to dismiss the common law negligence count as barred by sovereign immunity.

The trial court concluded the negligence count was prematurely filed. Thus, rather than dismiss the count, the trial court decided to abate the negligence count for the remainder of the one-year period starting on February 21, 2022, when the respondent provided written notice of his COVID-19 claim to the Seminole Tribe. Subsequently, the trial court entered a written order stating proceedings as to the negligence count "will not continue until the Court gives approval to resume hearings upon notice of either party after February 22, 2023."

The Seminole Tribe petitioned this court for a writ of prohibition.

*Our Analysis*

4

As a federally recognized Indian tribe, the Seminole Tribe has almost a 200-year experience of a common-law immunity from suit traditionally enjoyed by sovereign powers. *Houghtaling v. Seminole Tribe of Fla.*, 611 So. 2d 1235, 1236 (Fla. 1993) (explaining sovereign immunity for Indian tribes dates back to *Worcester v. Georgia*, 31 U.S. 515, 557 (1832), *overruled on other grounds by Nevada v. Hicks*, 533 U.S. 353, 361-62 (2001), "in which Chief Justice Marshall stated that the Indian tribes were 'distinct political communities, having territorial boundaries, within which their authority is exclusive. . . .'").

Tribal sovereign immunity "involves complete immunity from suit." *Seminole Tribe of Fla. v. Schinneller*, 197 So. 3d 1216, 1219 (Fla. 4th DCA 2016) (quoting *Citizens Prop. Ins. Corp. v. San Perdido Ass'n*, 104 So. 3d 344, 353 n.6 (Fla. 2012)). Otherwise, "the sovereign immunity provided to the tribe is illusory if the tribe is required to defend an action barred by the doctrine." *Id.* Thus, the Seminole Tribe "is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity[.]" *Lewis v. Edwards*, 815 So. 2d 656, 657 (Fla. 4th DCA 2002) (quoting *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998)).

We have previously explained that "a waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *Seminole Police Dep't. v. Casadella*, 478 So. 2d 470, 471 (Fla. 4th DCA 1985) (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978)). Additionally, any waiver must be "clear, explicit, and unmistakable." *Miccosukee Tribe of Indians v. Napoleoni*, 890 So. 2d 1152, 1153 (Fla. 1st DCA 2004). Further, we have said sovereign immunity waivers "must be strictly construed with any ambiguities being resolved <u>against</u> waiver." *Dep't of Fin. Servs. v. Barnett*, 262 So. 3d 750, 754 (Fla. 4th DCA 2018) (emphasis added), *approved*, 303 So. 3d 508 (Fla. 2020).

The Compact, as entered by the Seminole Tribe and the State of Florida, contains a voluntary waiver of sovereign immunity for tort claims to a limited extent, conditioned on claimants adhering to the specific procedures stated in Section VI.D. of the Compact. A patron-claimant's obligation to follow the Section VI.D. procedures to obtain a waiver of sovereign immunity is not optional, as clearly stated in the Compact: "For <u>tort claims</u> of Patrons made <u>pursuant to Section D. of this Part</u>, the Tribe agrees to waive its tribal sovereign immunity. . . ." (Emphasis added).

Because sovereign immunity waivers must be strictly construed, procedural requirements for the waiver should be strictly followed to enforce the waiver. *See Williams v. Miami-Dade County*, 957 So. 2d 52, 52 (Fla. 3d DCA 2007) (affirming a directed verdict in favor of Miami-Dade

5

County because the plaintiff "did not prove compliance with section 768.28, which requires plaintiffs in negligence suits against the state, its agencies, and subdivisions to follow strict procedures in order to take advantage of the State's waiver of sovereign immunity for tort liability"); *Aristide v. Jackson Mem'l Hosp.*, 917 So. 2d 253, 255-56 (Fla. 3d DCA 2005) (affirming dismissal of suit because the plaintiff "failed to follow procedural pre-suit requirements and the suit is barred by sovereign immunity"); *Metropolitan Dade County v. Lopez*, 889 So. 2d 146, 148 (Fla. 3d DCA 2004) (same); *Miami-Dade County v. Meyers*, 734 So. 2d 507, 508 (Fla. 3d DCA 1999) (same); *Metropolitan Dade County v. Braude*, 593 So. 2d 563, 564 (Fla. 3d DCA 1992) (same).

The respondent reported his initial claims of FDUTPA and FCRA violations to the Seminole Tribe in August 2021 and submitted the required claim notice form in September 2021, pursuant to the Compact's Section VI.D.1. The Seminole Tribe denied those claims in October 2021, which allowed the respondent to file his original complaint for torts under FDUTPA and FCRA.

Subsequently, the respondent filed his June 2022 second amended complaint alleging the inadequacy of the Seminole Tribe's COVID-19 policies as an additional basis for his FDUTPA claim, but also adding a common law negligence claim related to COVID-19.

The respondent's initial September 2021 claim form never included any notice of a COVID-19 claim, and he did not submit a claim form stating such grounds until February 2022. More importantly, the respondent's February 2022 second claim form never included any notice that he became ill—only allegations that the Seminole Tribe's COVID-19 policies purportedly violated FDUTPA.

Pertinently, when the respondent submitted the February 2022 claim form, he had not yet contracted COVID-19. As a result, the respondent filed the common law negligence count in the second amended complaint without having provided any pre-suit notice to the Seminole Tribe of the claim and without observing the Compact's required one-year period for pre-suit investigation and settlement procedures.

Accordingly, we agree with the Seminole Tribe's argument for prohibition asserting sovereign immunity was not waived as to the respondent's common law negligence count for two reasons: (1) the presuit notice of the claim was not properly provided under the procedures outlined in the Compact; and (2) the negligence count was filed before the

6

one-year period during which the Tribe was entitled to investigate and try to resolve the claim without the necessity of suit.

We reject the respondent's argument that the motion to dismiss improperly raised affirmative defenses and matters beyond the four corners of the complaint. We have agreed with the Second District that deciding whether the Seminole Tribe has sovereign immunity from suit is properly decided by a motion to dismiss and it is proper to consider matters outside the four corners of the complaint. *See Schinneller*, 197 So. 3d at 1218 (citing with approval *Seminole Tribe of Fla. v. McCor*, 903 So. 2d 353, 357-58 (Fla. 2d DCA 2005)). That is because Indian tribe sovereign immunity is a question of subject matter jurisdiction. *See Houghtaling*, 611 So. 2d at 1239 (holding Florida courts lack subject matter jurisdiction in suits against the Seminole Tribe unless sovereign immunity has been waived); *Casadella*, 478 So. 2d at 471 (recognizing "an Indian Tribe is a dependent sovereign not subject to the jurisdiction of the courts of this state absent its consent or the consent of Congress" (quoting *White Mountain Apache Indian Tribe v. Shelley*, 480 P.2d 654, 655 (Ariz. 1971))).

### Conclusion

Having determined the record does not show the Seminole Tribe waived sovereign immunity as to the respondent's common law negligence count, we grant the petition and prohibit the trial court from proceeding further in the suit below as to that count or any amended count asserting negligence regarding COVID-19. We do not address in this opinion the Seminole Tribe's argument that a negligence suit related to the respondent's claim that he was injured by contracting COVID-19 at a facility operated by the Tribe is forever barred.

*Petition granted.*

GROSS and CIKLIN, JJ., concur.

\*        \*        \*

**Not final until disposition of timely filed motion for rehearing.**

7